J-S31032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALLEN MILLER AND JANET H. MILLER FAMILY TRUST AND EDWARD T. OTT AND NANCY O. OTT, HIS WIFE DAVID L. OTT AND LISA R. OTT, HIS WIFE ROBERT G. OTT PAUL R. OTT AND LORI J. OTT, HIS WIFE AND GREGORY D. CONKLIN | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | No. 1158 EDA 2022 |
| | : : : | |
| JAMES A. MAHAN | : : | |
| Appellant | : | |

Appeal from the Order Entered March 25, 2022
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  C-48-CV-2019-09512

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED OCTOBER 13, 2022**

Appellant, James A. Mahan, appeals from the March 25, 2022, order[1]

entered in the Court of Common Pleas of Northampton County finding him in

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant filed his notice of appeal from the trial court's April 14, 2022, order, which denied his motion for reconsideration.  However, the appeal properly lies from the trial court's March 25, 2022, contempt order, which was a final and appealable order. ***See Lachat v. Hinchcliffe***, 769 A.2d 481, 488 (Pa.Super. 2001) (holding where sanctions are imposed by the trial court an order declaring a party to be in contempt is appealable).  ***See also Foulk v. Foulk***, 789 A.2d 254, 258 (Pa.Super. 2011) (*en banc*) (holding where a contempt order imposes sanctions, as well as contains a purging condition, the order is still final so long as no further court order be required before the sanctions take effect). We have changed the caption accordingly.

contempt and directing him, *inter alia*, to pay a fine of $10,000.00 to Appellees Miller, $10,000.00 to Appellees Ott, and $10,000.00 to Appellee Conklin,[2] as well as attorney's fees to Appellees in the amount of $3,717.00. After a careful review, we affirm.

The relevant facts and procedural history are as follows: Appellees own parcels of land on Kovar Lane in Upper Mount Bethel Township, Pennsylvania. Trial Court Opinion, filed 2/10/21, at 1-3. Their properties are landlocked without direct access to a public road. *Id.* at 3. They all use a private road, Kovar Lane, to access their individual properties. Appellant also owns a parcel of land on Kovar Lane, which he purchased at a sheriff's sale in 2010. *Id.*

On October 10, 2019, Appellees filed a civil complaint against Appellant averring that, on or about August 10, 2019, Appellant began significant construction on a portion of Kovar Lane, thereby blocking the road with construction vehicles for extended periods of time. Appellees indicated Appellant claimed he was the sole owner of Kovar Lane, and Appellant installed a gate across Kovar Lane, which would prevent Appellees from having ingress and egress to their properties. Appellees sought ejectment and asked the trial court to quiet title, as well as sought to enjoin Appellant from impeding their ability to use the private road known as Kovar Lane.

---

[2] "Appellees Miller" include Allen Miller and Janet H. Miller Family Trust; "Appellees Ott" include Edward T. Ott and Nancy O. Ott, his wife, David L. Ott and Lisa R. Ott, his wife, Robert G. Ott, and Paul R. Ott and Lori J. Ott, his wife; and "Appellee Conklin" includes Gregory D. Conklin.

On October 22, 2019, the trial court entered an *interim* order granting Appellees' request for a preliminary injunction. Specifically, the trial court indicated that, following a hearing, the parties agreed to the entry of a preliminary injunction whereby Appellant would not erect or close any gate across Kovar Lane or otherwise place upon Kovar Lane any structures that would impede Appellees' access to their properties.

On February 25, 2020, Appellant filed an answer with new matter and a counterclaim seeking to eject Appellees from and quiet title to Kovar Lane in his favor. The matter proceeded to a non-jury trial, and by opinion and order entered on February 10, 2021, the trial court ruled in favor of Appellees on all counts in their complaint and Appellant's counterclaim.

Relevantly, in its opinion, the trial court found that Kovar Lane, which begins at a public road known as River Road, has existed since at least the 1950's or 1960's ("Old Kovar Lane"); however, in 2015 or 2016, Appellant began to unilaterally reroute Kovar Lane ("New Kovar Lane"). **Id.** at 5.

The trial court determined Old Kovar Lane originally "led east through [Appellant's] property to a corner where it took a [] left turn and continued north, running approximately parallel to the Delaware River." **Id.** The road was originally a one-lane road that was partially pavement and partially gravel. **Id.** While there was no formal, recorded description of the metes and bounds of Old Kovar Lane, Appellant's deed and chain of title, as well as Appellees' deeds and chains of title, referenced Kovar Lane. **Id.** at 5-6. The

- 3 -

trial court noted Appellees' properties "have express easements through [Appellant's] property over Old Kovar Lane to access their properties." *Id.* at 6.

In 2015 or 2016, Appellant began to make changes to the original Kovar Lane, thus unilaterally rerouting Kovar Lane so that it "turns off from the east-west portion of Old Kovar Lane approximately halfway between River Road and the [] left turn." *Id.* "New Kovar Lane then arches in front of [Appellant's] home and rejoins Old Kovar Lane at the northern edge of [Appellant's] property." *Id.* When Appellant rerouted Kovar Lane, he made the north-south portion of Old Kovar Lane impassible by digging a large trench through it, and the trench is located south of where Old Kovar Lane crosses what is now Appellant's yard. *Id.*

The trial court found Appellees' properties are located to the north of Appellant's property, and Appellees did not consent to the relocation of Kovar Lane. *Id.* Moreover, the trial court found that, in 2019, Appellant built a new bridge to Kovar Lane from River Road, and, thus, the entrance to New Kovar Lane is now approximately ten to twenty feet away from the road's original location. *Id.* at 7. Appellees did not consent to the construction of the new bridge or entrance, and during the construction of the bridge, Appellees' ability to ingress and egress was restricted "on and off" for two months. *Id.* at 8.

In 2019, Appellant installed a gate on the east-west section of Old Kovar Lane just before the left turn onto New Kovar Lane. *Id.* This gate is on

Appellant's property, and it could potentially be used to close off full access to Kovar Lane, thus restricting Appellees' access to their properties. *Id.*

Based on its findings, the trial court ruled the property of each Appellee has an express easement for the use of Old Kovar Lane in order to access his or her landlocked property, with all of the rights and responsibilities that such entails. *Id.* at 12-13. Accordingly, the trial court held Appellant may not impede Appellees' use of their easements for Old Kovar Lane. *Id.* at 13.

Moreover, the trial court held Appellant, as owner of the servient estate, "had no right to unilaterally move the footprint of the easements." *Id.* "Use of New Kovar Lane, the new bridge, and the new entrance is not what [Appellees'] easements entitle them to." *Id.* Thus, the trial court determined Appellant frustrated Appellees' use of their easements by "making the original Kovar Lane and its entrance impassible." *Id.* at 14.

The trial court ruled Appellant must restore the original entrance to, as well as the north-south portion of, Old Kovar Lane so that Appellees may use the easements expressly granted to them in their chains of title. *Id.* The trial court held "[Appellant] will be enjoined from altering or blocking the easements."[3] *Id.*

In its February 10, 2021, order, the trial court specifically held:

1. [Appellees] have express easements, by virtue of their chains of title, to use the roadway known as Kovar Lane, as described

---

[3] As to Appellant's counterclaim, the trial court held he could not prevail on his ejectment action or claim to quiet title to Kovar Lane. *Id.* at 14-15.

- 5 -

as Old Kovar Lane in the [trial] court's [opinion], to access their properties;

2. [Appellant] is enjoined from blocking, impeding, or in any way obstructing [Appellees'] use of Kovar Lane to access their properties;

3. [Appellant] shall restore the north-south portion of Kovar Lane to its prior condition, passable by vehicle, within ninety (90) days and at his own expense. Until then, [Appellees] may continue to use the altered footpath of Kovar Lane, described as New Kovar Lane in the [trial] court's [opinion], to access their properties;

4. [Appellant] shall restore the entrance of Kovar Lane at River Road to its prior condition within ninety (90) days at his own expense. Until then, [Appellees] may continue to use the altered entrance to Kovar Lane;

5. [Appellant] is not required to remove the gate on his property but may not close it or otherwise obstruct [Appellees'] access to Kovar Lane; and

6. [Appellees] are entitled to court costs.

Trial Court Order, filed 2/10/21, at 2.

On February 19, 2021, Appellant filed a post-trial motion, to which Appellees filed an answer.

While Appellant's post-trial motions were pending, on May 6, 2021, Appellees filed a petition for contempt against Appellant. Specifically, Appellees averred that, although Appellant took some steps to restore Old Kovar Lane, Appellant did not restore the "soft" curve to Kovar Lane where Appellees make a left-hand turn after entering Kovar Lane from River Road. They also averred Appellant failed to pave or gravel portions of Old Kovar Lane to restore it to its original condition.

Appellees noted Appellant placed a gate across a portion of New Kovar Lane such that Appellees have been unable to use New Kovar Lane while Appellant makes the necessary renovations to Old Kovar Lane. Appellees contended Appellant's actions do not comply with the trial court's February 10, 2021, order, and thus, they sought an order of contempt.

On May 25, 2021, Appellant filed a reply to Appellees' petition for contempt wherein he denied Appellees' averments. He further argued Appellees' petition for contempt was premature since his post-trial motions were, at that time, still pending such that he had no obligation to restore Old Kovar Lane to its original condition.

By order entered on July 19, 2021, the trial court denied Appellant's post-trial motion, and on August 2, 2021, Appellant filed an appeal to this Court. Additionally, on this same date, Appellant filed in the trial court a petition for supersedeas pending appeal.

On August 5, 2021, the trial court entered an order indicating it was holding Appellees' contempt petition in abeyance pending disposition of Appellant's appeal, and after the appeal was decided, Appellees could place the case on a non-jury trial list for disposition of the contempt petition. Further, the trial court specifically provided that until Appellant's appeal concluded:

1. [Appellant] shall not block, impede, or in any way obstruct [Appellees'] use of New Kovar Lane, as that lane is defined in the [trial] court's [Opinion] filed on February 10, 2021; and

2. [Appellant] shall not block, impede, or in any way obstruct [Appellees'] use of the altered entrance to Kovar Lane, as defined in the [trial] court's [Opinion] filed on February 10, 2021.

Trial Court Order, filed 8/5/21, at 2.

On August 18, 2021, Appellant voluntarily discontinued his August 2, 2021, appeal, which he had filed in this Court. Accordingly, Appellees requested that their contempt petition be placed on the trial court's non-jury trial list for a hearing.

On August 31, 2021, Appellant filed a "Motion for the Enlargement of Time as to the Court Verdict and Order of February 10, 2021." Therein, Appellant indicated that, as a practical matter, he had been unable to comply fully with the trial court's February 10, 2021, order as it related to restoring the original location and condition of Old Kovar Lane. He noted that Appellees filed their contempt petition while Appellant's post-trial motions were pending. He also noted the trial court's August 2, 2021, order operated as a stay regarding Appellant's obligation to restore Old Kovar Lane. Appellant averred that, although he had been unable to fully comply with the trial court's February 10, 2021, order as it related to restoring the original location and condition of Old Kovar Lane, he fully intended to do so.

Thus, Appellant sought an extension of time to comply with the trial court's February 10, 2021, mandate that he "restore the entrance of Kovar Lane at River Road to its prior condition within ninety (90) days," and "restore

the north-south portion of Kovar Lane to its prior condition…within ninety (90) days[.]" Appellant's Motion for Enlargement of Time, filed 8/31/21, at 3.

By order entered on September 29, 2021, the trial court granted Appellant's request for an enlargement of time indicating:

1. [Appellant] shall restore the entrance of Kovar Lane at River Road to its prior condition within 180 days at his own expense. Until then, [Appellees] may continue to use the altered entrance to Kovar Lane;

2. [Appellant] shall restore the north-south portion of Kovar Lane to its prior condition, passable by vehicle, within 180 days and at his own expense. Until then, [Appellees] may continue to use the altered footpath of Kovar Lane, described as New Kovar Lane in the [trial] court's [opinion] filed on February 10, 2021, to access their properties; and

3. Pending further order of court, [Appellant] may not close the gate on his property or otherwise obstruct [Appellees'] access to Kovar Lane and/or New Kovar Lane.

Trial Court Order, filed 9/29/21, at 2. The trial court's order indicated the hearing on Appellees' contempt petition was scheduled for October 15, 2021.

At the October 15, 2021, contempt hearing, Appellee Allen Miller ("Mr. Miller") testified he resides in a house on Kovar Lane, and he is a plaintiff in the underlying civil suit against Appellant. Mr. Miller testified that, before Appellant created New Kovar Lane, he accessed his property on Old Kovar Lane, which he described as follows:

[It was] a macadam road that came off of River Road and was an L-shape, whereas we came off of River Road we drove east toward the river. Before we got to the river, there was a soft curve that took us in a northerly direction in front of six houses that were there, and Kovar Lane had ended at our property.

N.T., 10/15/21, at 8.

- 9 -

Mr. Miller noted that Old Kovar Lane had macadam on the road after the soft curve up to the property of Appellee Gregory D. Conklin ("Mr. Conklin"), and from that point to Mr. Miller's house, the road was gravel. *Id.* at 11.

Mr. Miller testified that Appellant unilaterally "relocated" the soft curve, which was on Old Kovar Lane. *Id.* at 9-10. He noted Appellant also made portions of Old Kovar Lane impassable by putting deep trenches across the road. *Id.* These actions led to Appellees filing the October 10, 2019, complaint in the underlying civil matter. *Id.* at 10.

Mr. Miller testified the trial court, as part of its February 10, 2021, order, directed Appellant to restore Old Kovar Lane back to its original condition, and thereafter, Appellant began to restore Old Kovar Lane. *Id.* at 11. In April of 2021, Appellant advised Mr. Miller he was finished restoring Old Kovar Lane to its original condition, and he closed the gate to New Kovar Lane, thus preventing Appellees from using New Kovar Lane. *Id.* at 11, 30-31.

Mr. Miller specifically testified:

From early April [of 2021], when [Appellant] claimed that he had restored Old Kovar Lane, he had that gate [across New Kovar Lane] closed for the better part of almost six months. There was a short period of approximately a week when it was open and we were able to use it, and then we've been able to use it the last two weeks. Other than that, that gate [across New Kovar Lane has] been closed.

*Id.* at 31.

Mr. Miller testified that, although Appellant indicated in April of 2021 that he was finished restoring Old Kovar Lane, the road "was not put in the

original place, and it did not have a soft curve and it did not have macadam." *Id.*

Mr. Miller testified that, after Appellant claimed to be finished restoring Old Kovar Lane, the road had large potholes, some of which were four to six inches deep and made cars "bottom out." *Id.* at 12. He testified Old Kovar Lane was "absolutely not" in the same condition as it had been prior to Appellant unilaterally creating New Kovar Lane. *Id.* He noted Appellant failed to restore the macadam and gravel to Old Kovar Lane resulting in extensive mud, which created "wear and tear on the cars[.]" *Id.* at 13-14. He also testified Appellant placed a large pile of gravel in the path of where Old Kovar Lane originally existed. *Id.* at 14, 29.

Mr. Miller testified that, in August of 2021, Appellant placed large rocks along the side of the renovated Old Kovar Lane in the area of the disputed curve, thus narrowing the curve, as well as in the path of where Old Kovar Lane should have been located in front of Mr. Conklin's property. He noted the rocks were large enough that Appellant used a front-end loader to place the rocks. *Id.* at 21. Mr. Miller indicated that, since the large rocks were placed by Appellant in August of 2021, it was evident that Appellant was not intending to relocate Kovar Lane to its original location in response to the trial court's February 10, 2021, order. *Id.* at 20-21, 28.

Mr. Miller noted the rocks placed in front of Mr. Conklin's property forced Mr. Miller to gain access to his property by driving to the left of the stones and

- 11 -

onto Mr. Conklin's property, which is not where Old Kovar Lane had been located. *Id.* at 22. He specifically testified the "rocks prohibited [him] from accessing [his] property in the manner in which [he] did from when [he] bought the property[.]" *Id.* at 24. He noted the rocks caused a "problem" with him safely coming to and going from his property. *Id.* at 26.

Mr. Miller testified a portion of the renovations made to Old Kovar Lane, which Appellant completed after the trial court's February 10, 2021, order, placed the road close to a utility pole and guy wire. *Id.* at 35. "[T]o [now] make [the] turn, which is a right angle, [the driver] come[s] within a foot or two of that guy wire and utility pole. [The driver has] to be very careful." *Id.* He noted this portion of the road, when it was the original Old Kovar Lane, had a "soft curve" about six to eight feet away from the utility pole and wire; however, Appellant's renovations made in response to the court's order made the road into a "right angle" coming within a foot or two of the pole and wire. *Id.* at 35-36. He noted the "soft curve is necessary to get trailers with boats and whatnot in and out, because you can't navigate pulling a trailer around this sharp right angle. You need the soft curve. I mean that's why it was there to begin with." *Id.* at 37.

Mr. Miller testified that, because Appellant closed the gate on New Kovar Lane and claimed to be done restoring Old Kovar Lane, Mr. Miller was forced to gain access to his property through dirt, mud, and potholes, while swerving

around large rocks. *Id.* at 31. Mr. Miller noted Appellant's restoration project of Old Kovar Lane made access to his property difficult. *Id.* at 45.

On cross-examination, Mr. Miler indicated that, since the trial court entered its order on February 10, 2021, any steps Appellant has made to restore Old Kovar Lane to its original condition has not resulted in a road "passable by vehicle." *Id.* at 61. Specifically, Mr. Miller testified that, although Appellant told him he was finished restoring Old Kovar Lane, "it's not really passable." *Id.* at 61-62. In this vein, Mr. Miller indicated that, while he has been able to drive on what Appellant refers to as the restored Old Kovar Lane, he has "bottomed out" several times because of the condition of the road. *Id.* at 62. In any event, he noted Appellant never relocated Old Kovar Lane to its precise original location as directed by the trial court's February 10, 2021, order. *Id.*

On re-direct examination, Mr. Miller clarified that, after the February 10, 2021, trial court order, Appellant forced him to use the renovated Old Kovar Lane, which was not placed in its original condition. Specifically, he noted that, after Appellant indicated he was done renovating Old Kovar Lane, he closed the gate so that Mr. Miller no longer had access to New Kovar Lane. *Id.* at 74-75. Thus, he had "no choice" but to traverse the "restored" Old Kovar Lane, which was not in a passable condition. *Id.*

He noted Appellant did not open the gate, which ran across New Kovar Lane, until September 29, 2021, when the trial court gave Appellant additional

- 13 -

time to make various court-ordered renovations to Old Kovar Lane. *Id.* After Appellant opened the gate on September 29, 2021, Mr. Miller began to use New Kovar Lane because the renovated Old Kovar Lane is "a mess, it's hard on the cars, and it's not a real viable road." *Id.* at 75.

Mr. Conklin was called as a witness by Appellant. He testified he owns two parcels of land, which are on opposite sides of Old Kovar Lane. *Id.* at 78. He acknowledged that, during the spring and summer of 2021, he allowed rocks to be placed on his property. *Id.* He noted the rocks run alongside "the old side of Kovar Lane" on his property. *Id.* at 79.

On cross-examination, Mr. Conklin testified Appellant asked him for permission to place the stones on Mr. Conklin's property along Kovar Lane. *Id.* at 83. Mr. Conklin indicated he gave Appellant permission; however, after the stones were placed, he asked Appellant to remove them, and Appellant refused. *Id.* at 86-87.

Mr. Conklin testified Appellant placed the stones "right square in the middle of where Old Kovar Lane used to be." *Id.* at 92. He admitted the rocks prevent Mr. Miller from accessing his property the way he used to before Appellant unilaterally made any changes to Old Kovar Lane. *Id.* at 93. Mr. Conklin testified he is unable to remove the stones since they are heavy. *Id.* at 88. He noted Appellant used heavy equipment to place the stones. *Id.*

At the conclusion of the hearing, by order and opinion entered on March 25, 2022, the trial court found Appellant in civil contempt and held that, within

- 14 -

ninety days, Appellant must pay a fine of $10,000.00 to Appellees Miller, $10,000.00 to Appellees Ott, and $10,000.00 to Appellee Conklin. The trial additionally held the following:

> [Appellant] may purge himself of the contempt and sanctions by conveying express easements to [Appellees] from River Road over the new bridge entrance to Old Kovar Lane, over Old Kovar Lane to New Kovar Lane, and over New Kovar Lane to where Old Kovar Lane ends,…to access their properties. Said easements must contain a metes and bounds description, in recordable form, at [Appellant's] expense. Alternatively, [Appellant] may purge himself of the contempt and sanctions by hiring, at his own expense, a third-party contractor, chosen by [Appellees], to bring Old Kovar Lane into compliance with the [trial] court's Order of February 10, 2021, within thirty (30) days.
>
> In any event, [Appellant] shall fully comply with the [trial] court's Order of February 10, 2021, and shall:
>
> 1. Reinstall the soft curve at the portion of Old Kovar Lane where [Appellees] are required to make a left-hand turn from River Road;
>
> 2. Restore Old Kovar Lane to its original condition;
>
> 3. Permit [Appellees] to use New Kovar Lane until easements have been conveyed, the restoration has been completed to [Appellees'] satisfaction, or pending further order of court;
>
> 4. [Appellant] shall pay [Appellees] the sum of $3,717.00 for attorney's fees within thirty (30) days;
>
> 5. [Appellant] shall remove the gate he installed on the east-west section of Old Kovar Lane just before the left turn onto New Kovar Lane within thirty (30) days; and
>
> 6. Within fourteen (14) days, [Appellant] shall remove all boulders and rocks placed on or adjacent to Old Kovar Lane since February 10, 2021.

Trial Court Opinion, filed 3/25/22, at 2-3.

On April 4, 2022, Appellant filed a motion for reconsideration and to vacate the contempt order, as well as a motion for supersedeas. By order entered on April 14, 2022, the trial court granted, in part, and denied, in part, Appellant's motion. Specifically, the trial court denied Appellant's request for reconsideration or to vacate the contempt order; however, the trial court granted Appellant's request for supersedeas, in part, indicating it was "staying" the March 25, 2022, contempt order pending resolution of a timely appeal.

However, the trial court held that in the *interim*:

1. [Appellant] shall permit [Appellees] to use New Kovar Lane pending further order of court;

2. [Appellant] shall not close the gate he installed on the east-west section of Old Kovar Lane just before the left turn onto New Kovar Lane; and

3. Within fourteen (14) days, [Appellant] shall remove all boulders and rocks placed on or adjacent to Old Kovar Lane since February 10, 2021.

Trial Court Order, filed 4/14/22, at 2.

Appellant filed a timely appeal to this Court on April 22, 2022. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant timely complied, and the trial court filed a responsive Rule 1925(a) opinion.

On appeal, Appellant sets forth the following issue in his "Statement of Questions Involved" (verbatim):

A. Whether the trial court Order and Opinion of March 25, 2022, constitute a fundamental error of law and/or an abuse of discretion by holding Appellant in contempt?

Appellant's Brief at 4 (suggested answer omitted).

On appeal, Appellant contends the trial court's finding of civil contempt is not supported by the record.[4] Specifically, he contends "any potential technical deviation" from the trial court's February 10, 2021, order was neither volitional nor done with wrongful intent. *See* Appellant's Brief at 25. In essence, Appellant challenges the sufficiency of the evidence adduced at the hearing to sustain the trial court's finding of contempt.

"This Court will not reverse or modify a final [order of contempt] unless there has been an error of law or an abuse of discretion, or if the findings are not supported by the record, or there has been a capricious disbelief of the credible evidence." **Stahl v. Redcay**, 897 A.2d 478, 488 (Pa.Super. 2006) (citations, quotation, and quotation marks omitted).

> [In proceedings for civil contempt,] the general rule is that the burden of proof rests with the complaining party to

---

[4] Both parties, as well as the trial court, indicate the trial court's finding of contempt in this case was civil contempt as opposed to criminal or indirect criminal contempt. We agree. **See Lachat**, **supra** (holding civil contempt is remedial in nature and factors pointing to civil contempt include the complainant is a private person, the contempt petition is filed as a continuation of the original action, the court's finding of contempt affords relief to a private party, the relief requested is primarily for the benefit of the complainant, and the acts of contempt are primarily civil in character). It is clear from the record the trial court's dominant purpose for the contempt order was to coerce Appellant into compliance with the trial court's order, which was entered for the benefit of Appellees in the underlying civil case. Also, Appellant was given the opportunity to purge himself before imposition of punishment. **See In re Estate of DiSabato**, 165 A.3d 987 (Pa.Super. 2017) (holding if contemnor is given an opportunity to purge himself before imposition of punishment the contempt order is civil in nature).

demonstrate, by preponderance of the evidence, that the defendant is in noncompliance with a court order. However, a mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt.

To be punished for contempt, a party must not only have violated a court order, but that order must have been definite, clear, and specific—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct.

*Lachat*, 769 A.2d at 488–89 (citations, quotations, quotation marks, and emphasis omitted).

"For a person to be found in civil contempt, the moving party must prove that: (1) the contemnor had notice of the specific order or decree that he disobeyed; (2) the act constituting the violation was volitional; and[,] (3) the contemnor acted with wrongful intent." *Gunther v. Bolus*, 853 A.2d 1014, 1017 (Pa.Super. 2004). *See Lachat*, *supra*.

[A] mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt. If the alleged contemnor is unable to perform and has, in good faith, attempted to comply with the court order, then contempt is not proven. The contemnor has the burden to prove the affirmative defense that he lacks the ability to comply. The defense of impossibility of performance is available to a party in a contempt proceeding if the impossibility to perform is not due to the actions of that party.

*Thomas v. Thomas*, 194 A.3d 220, 225-26 (Pa.Super. 2018).

Moreover, we defer to the trial court's credibility determinations with respect to witnesses who have appeared before it because that court has had the opportunity to observe their demeanor. *Habjan v. Habjan*, 73 A.3d 630, 644 (Pa.Super. 2013).

Here, regarding the first prong (*i.e.*, whether Appellant had notice of a specific order or decree that he disobeyed), the trial court issued an order on February 10, 2021, which was clear, definite, and specific regarding Appellant's obligation to restore the north-south portion of Old Kovar Lane to its prior condition, passable by vehicle, as well as restore the entrance of Old Kovar Lane at River Road to its prior condition. **See** Trial Court Order, filed 2/10/21, at 2; **Lachat**, **supra**. Further, the February 10, 2021, order was clear, definite, and specific regarding Appellant's obligation to permit Appellees access to and the use of New Kovar Lane during the renovations to Old Kovar Lane. **See id.** Appellant does not dispute he was provided with notice of the trial court's order.[5]

Regarding the second prong, whether Appellant deliberately violated the trial court's order, Appellant contends that, while he may not have fully complied with the trial court's order to restore Old Kovar Lane to its original location and condition, such failure does not constitute contempt since he attempted to do so. He notes the trial court stayed his obligation to fully renovate Old Kovar Lane pending Appellant's initial appeal, as well as gave

---

[5] Moreover, we note that both the trial court's August 5, 2021, order, which granted Appellant's request to stay his obligation to make the renovations to Old Kovar Lane pending Appellant's prior appeal, as well as the trial court's September 29, 2021, order, which granted Appellant's request for an extension of time to make the necessary renovations, specifically provided that Appellant could not obstruct Appellees' use of New Kovar Lane while the renovations to Old Kovar Lane were ongoing. Appellant does not dispute that he received notice of these orders.

him an extension of time on September 29, 2021, after he pled that he was attempting to make the court-ordered renovations but had been unable to complete them. Accordingly, Appellant avers his noncompliance with the trial court's February 10, 2021, order was not volitional.[6]

However, we conclude Appellant's argument overlooks the fact the trial court found Appellant to be in contempt not because he failed to complete the renovations to Old Kovar Lane but because he prevented Appellees access to and the use of New Kovar Lane while the renovations to Old Kovar Lane were ongoing. **See** Trial Court Opinion, filed 3/25/22, at 7-9. In this vein, the trial court held Appellant's blocking of Appellees' use of New Kovar Lane while Appellant was making the renovations to Old Kovar Lane was a deliberate and willful violation of the trial court's February 10, 2021, order.

Specifically, the trial court held:

> [Appellant] has clearly violated paragraphs 3-5 of the [trial] court's order by closing the gate on New Kovar Lane while Old Kovar Lane was not yet restored. As the [trial] court has found that Old Kovar Lane has not been adequately restored, [Appellant] has impeded the use of Old Kovar Lane and New Kovar Lane at the same time, requiring [Appellees] to risk damage to their vehicles in order to reach their own properties.

---

[6] To the extent Appellant alternatively argues he made all necessary renovations to Old Kovar Lane such that he cannot be held in contempt, we note the trial court found Appellant did not relocate Old Kovar Lane to its original location as directed by the trial court's February 10, 2021, order. Further, the trial court found the condition of the north-south portion of Old Kovar Lane was not in a passable condition as directed by the trial court's order. Mr. Miller's testimony, which the trial court found credible, clearly supports the trial court's findings. N.T., 10/15/21, at 9-31.

*** 

> [I]t is clear that [Appellant] acted volitionally,…[since] he took the action of blocking [Appellees'] use of New Kovar Lane despite not restoring Old Kovar Lane to its original condition by closing the gate, in direct violation of the [trial] court's Order.

*Id.* at 8-9.

We conclude the trial court has not abused its discretion, and the record supports the trial court's findings. ***See Stahl***, ***supra***. ***See also Sutch v. Roxborough Memorial Hospital***, 142 A.3d 38, 68 (Pa.Super. 2016) (holding that, in order to find contempt, the evidence must establish an intentional disobedience or an intentional disregard of the lawful process of the court).

Specially, Mr. Miller testified during the contempt hearing that Appellant did not fully complete the renovations to Old Kovar Lane. He testified Appellant neither restored Old Kovar Lane to its original location nor restored the macadam and gravel, thus resulting in Old Kovar Lane being extensively muddy with large potholes. N.T., 10/15/21, at 12. Mr. Miller testified that, despite the renovations not being made adequately, Appellant told him in April of 2021 that he was finished renovating Old Kovar Lane. *Id.* at 11, 30-31.

Mr. Miller testified Appellant then closed the gate so that Appellees could no longer use New Kovar Lane. *Id.* Mr. Miller testified the gate was closed for the better part of the six months leading up to the contempt hearing. *Id.*

The trial court found Mr. Miller's testimony to be credible.[7] *See Habjan*, *supra*.

We agree with the trial court that Appellees proved by a preponderance of the evidence that, although Old Kovar Lane was not in a passable, fully restored condition or in its original location, Appellant forced Appellees to use Old Kovar Lane while preventing the use of New Kovar Lane, which was in direct violation of the trial court's February 10, 2021, order. Appellant's closing of the gate to prevent Appellees from using New Kovar Lane while he was still renovating Old Kovar Lane was a volitional violation of the trial court's order. *See Roxborough*, *supra*; *Gunther*, *supra*.

Regarding the third prong, whether Appellant acted with wrongful intent, Appellant contends he acted in good faith at all times, and he had no intent to violate the trial court's February 10, 2021, order.

> [A] party's wrongful intent can often be inferred from circumstantial evidence. [A] party's wrongful intent can be inferred where it is clear from the language of the court order that the conduct in question violates the court order and the evidence shows that the contemnor knowingly failed to comply. [W]hen making a determination regarding whether a [party] acted with wrongful intent, the court should use common sense and consider context, and wrongful intent can be imputed to a [party] by virtue of the substantial certainty that his actions will violate the court order.

---

[7] Appellant contends the trial court erred in finding the testimony of Mr. Miller to be credible. *See* Appellant's Brief at 30. However, it is well-settled that determinations regarding the credibility of the witnesses is within the trial court's province. *See Habjan*, *supra*.

- 22 -

***Jordan v. Pennsylvania State University***, 276 A.3d 751, 766-67 (Pa.Super. 2022) (quotation marks and quotations omitted).

Here, the trial court determined Appellees demonstrated by a preponderance of the evidence that Appellant acted with a wrongful intent when he closed the gate to prohibit Appellees from using New Kovar Lane while the renovations to Old Kovar Lane were ongoing. Specifically, the trial court concluded the language of its order was clear, yet Appellant intentionally closed the gate to New Kovar Lane while knowing Old Kovar Lane was in "shoddy" condition. Trial Court Opinion, filed 3/25/22, at 8.

Finding Mr. Miller's testimony to be credible, the trial court determined Appellant impeded the safe use of Old Kovar Lane by failing to restore it to a passable condition while at the same time closing the gate to New Kovar Lane. ***Id.*** Thus, Appellees "risk[ed] damage to their vehicles in order to reach their own properties" due to Appellant's actions. ***Id.***

We find no abuse of discretion and conclude the trial court's findings are supported by the record. ***See Stahl***, ***supra***. Based on the evidence, the trial court properly inferred Appellant's wrongful intent from the circumstantial evidence, and common sense dictates Appellant was aware that preventing Appellees from using New Kovar Lane while he was still renovating Old Kovar Lane was "substantially certain" to violate the trial court's order. ***See Jordan***, ***supra***.

For all of the foregoing reasons, we conclude the trial court properly found Appellant to be in contempt of the trial court's February 10, 2021, order, and thus, we affirm.

Affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: 10/13/2022