J-A11011-24
J-A11012-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SARAH A. SOLLENBERGER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON D. FUNK | : | |
| | : | |
| Appellant | : | No. 1093 MDA 2023 |

Appeal from the Order Entered June 9, 2023
In the Court of Common Pleas of York County Domestic Relations at
No(s):  03209 SA 2004

| | | |
|---|---|---|
| GINA R. PARKS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON D. FUNK | : | |
| | : | |
| Appellant | : | No. 998 MDA 2023 |

Appeal from the Order Entered June 9, 2023
In the Court of Common Pleas of York County Domestic Relations at
No(s):  CP-67-SA-1248-2019,
DRO 123142, Pacses No. 388116875

BEFORE:  BOWES, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                    **FILED: AUGUST 9, 2024**

James Funk appeals from the order finding him in contempt for failing to pay court-ordered child support obligations to Gina Parks and Sarah A. Sollenberger (collectively Appellees) and imposing six months of incarceration, contingent on Appellant paying a $2,000 purge condition or

completing a work-release program.[1]  We vacate the order in part and affirm in part.

We glean the following from the certified record.  Appellant is currently ordered to pay $457.92 and $487.91 per month to Ms. Parks and Ms. Sollenberger, respectively, to support the minor child that he has with each woman.  On June 8, 2022, the trial court found Appellant in contempt and ordered him to serve six months of incarceration, deferred until July 1, 2022.  When Appellant failed to appear at York County Prison, the court issued a warrant for his arrest but released him approximately six weeks later when he satisfied a $2,000 purge.  Appellant borrowed this money from his mother and has since been unable to repay her.

Due, at least in part, to a period of misfortune in his employment, Appellant's payment history never improved, and between June 8, 2022 and March 29, 2023, he accrued combined arrears of $21,128.69.  Prior to September 2022, Appellant owned and operated a tree business as his sole means of income.  On September 9, 2022, however, a hired contractor stole his equipment and damaged his work vehicle.  Subsequently, Appellant borrowed equipment to maintain his operations, but in February 2023, the

_____

[1] Following a consolidated contempt proceeding regarding both cases, in which the York County Domestic Relations Section represented Appellees' interests, the trial court entered identical orders at the respective trial court dockets. We resolve these appeals jointly given that they involve overlapping facts and stem from the same finding of contempt.

garage where he stored this equipment was destroyed by fire, leaving Appellant unemployed, and with no other means to continue his tree services.

In late April or early May 2023, at the trial court's urging, Appellant began working at Ollie's Bargain Outlet Warehouse, operating forklifts. He worked more than forty hours per week and earned $15 per hour. As of June 7, 2023, he had been employed for over five weeks, but had only received one full paycheck, which Appellant claimed amounted to $600. To make ends meet, Appellant resided rent-free with his mother, but planned to contribute to rent and living expenses in the future.

Having continued to fail to satisfy his support obligations, Appellant was again brought before the court on March 29, 2023, to address the present contempt allegations. The trial court found Appellant in contempt of the respective support orders, and it continued sentencing to June 7, 2023, in order for Appellant to maintain his employment. Prior to sentencing, Appellant submitted $457.77, which was $2,517.75 short of his support obligations for the ten-week period since the March hearing. Ultimately, the court imposed the abovementioned sentence, which included two purge options. The first required Appellant to pay a monetary purge of $2,000. The second granted him liberty after completing a 120-day work-release program.

These timely appeals followed.[2]  Appellant filed a consolidated court-ordered Pa.R.A.P. 1925(b) statement for the two appeals, and the trial court issued a single responsive Rule 1925(a) opinion that it filed at both docket numbers.  The appeals assert the identical issue:  "Did the lower court abuse its discretion in setting the purge components of Jason Funk's contempt judgment and sentence where there was no evidentiary basis for concluding that, beyond a reasonable doubt, Funk had the present ability to satisfy either purge condition and thus avoid incarceration?"  Appellant's brief at 4.[3]  We review Appellant's claim in light of the following legal principles:

> On appeal from an order holding a party in contempt of court, our scope of review is very narrow, and we place great reliance on the court's discretion.  The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason.

***Thomas v. Thomas***, 194 A.3d 220, 225 (Pa.Super. 2018) (cleaned up).

At the outset, we observe that the trial court concedes that it erred in conditioning the work-release purge upon completing the program because it would require Appellant to endure 120 days of incarceration, thereby violating Appellant's present ability to satisfy the purge.  ***See*** Trial Court Opinion, 9/5/23, at 12-13.  The Court explained, "We acknowledge that the outmate

---

[2] The trial court stayed Appellant's imprisonment pending the outcome of these appeals.

[3] Appellant's briefs for both cases are identical except for the Appellees' names and the arrears due to each.  For purposes of this memorandum, therefore, we only cite the brief relating to Ms. Sollenberger.

purge option violated [Appellant's] present ability due to it relying upon a future event and, thus, the key to the jailhouse door was not in [his] hands at the time of sentencing." *Id*. at 13. We agree that the trial court erred in crafting a purge condition premised upon Appellant's future completion of a work-release program because that condition did not provide Appellant a means to immediately fulfill the requirement. *See Cunningham v. Cunningham*, 182 A.3d 464, 472 (Pa.Super. 2018) (contemnor must have present ability to comply with purge condition). Accordingly, we vacate that portion of the contempt order.

As to the remaining component of this issue, Appellant does not contest his conviction of contempt. Instead, he argues that the trial court erred in imposing a $2,000 purge condition because it erroneously determined that Appellant had the present ability to pay. *See* Appellant's brief at 4.

Initially, we note that the court found Appellant in civil contempt rather than criminal contempt, because its sole purpose was to coerce Appellant's compliance instead of impose punishment. *See In Interest of E.O.*, 195 A.3d 583, 586 (Pa.Super. 2018) (concluding that civil contempt has as its dominant purpose to enforce compliance with the court's directive). In finding a party in civil contempt, a court typically imposes a conditional prison sentence, giving the contemnor "an opportunity to purge himself before the imposition of punishment." *In re Estate of DiSabato*, 165 A.3d 987, 992 (Pa.Super. 2017) (cleaned up).

Our Supreme Court has stated unequivocally that, in setting the conditions for a purge, a court must be "convinced [b]eyond a reasonable doubt, from the totality of the evidence before it, the contemnor has the present ability to comply." ***Cunningham***, 182 A.3d at 472. In response, the contemnor may proffer evidence that "he has the present inability to comply with the court order."[4] ***In re Estate of DiSabato***, 165 A.3d at 992 (cleaned up). When considering such evidence in the case of a monetary purge, the court must solely examine the contemnor's current financial means, without taking into account his or her future earning capacity or whether he or she can borrow money from a third party. ***See Commonwealth v. Smetana***, 191 A.3d 867, 873 (Pa.Super. 2018) (holding that the court should not weigh an appellant's indication that a sibling could potentially lend him money in determining the appellant's ability to pay); ***Hyle v. Hyle***, 868 A.2d 601, 605 (Pa.Super. 2005) (explaining that the court should not contemplate whether a purge amount is within an appellant's means to obtain with future employment).

In fashioning the $2,000 purge condition, the trial court deduced that Appellant had the present ability to pay said amount as of the June 7, 2023

---

[4] In ***Bredbenner v. Hall***, 605 MAL 2023, 2024 WL 3506682, (Pa. July 23, 2024), our High Court recently granted allowance of appeal to determine whether a contemnor waives the issue concerning his ability to pay a purge condition "if he fails to proffer affirmative proof of his financial circumstances."

- 6 -

sentencing hearing. *See* Trial Court Opinion, 9/5/23, at 16. Specifically, it

stated the following:

> Setting aside that [Appellant] was, by his own admission, working more than forty (40) hours per week, forty hours times $15.00 per hour times just five of the over five weeks that [he] ultimately admitted to having been working equals $3,000.00. In actuality, [he] worked more hours and had made more money by virtue of overtime. We understand that there would be withholding taxes; however, counting just . . . over five weeks of employment at Ollie's, sans overtime, [Appellant] had earned $3,000.00. Subtracting out the total payments made on his cases through garnishments, which amounted to $457.77, [he], in five weeks, had earned $2,542.23. Again, we understand that there were withholdings on the $3,000.00. However, the evidence adduced was that [Appellant] also worked overtime, which would have been at a rate higher than $15.00 per hour (the legal rate is time and one-half for 40 to 60 hours, and double time for hours past 60 hours per week). [Appellant]'s testimony was riddled with inconsistencies and half-truths that had to be pried from him. One such example is that it is, frankly, impossible that [he] was only clearing $600.00 from each paycheck, as he claimed.
>
> Considering [Appellant]'s over five weeks of employment and lack of living expenses, [he] had more than sufficient funds, at the time of sentencing, to satisfy the remainder of his purge. Any consideration of [his] overtime as well as his work beyond the five-week mark simply added to [his] ability to easily pay the $2,000.00 purge established.

*Id*. at 15 (cleaned up). Accordingly, the court found that the circumstances

supported that Appellant, beyond a reasonable doubt, possessed the present

ability to pay the $2,000 purge at the time of sentencing. *Id*. at 16.

In response, Appellant argues that the court set the $2,000 purge

simply based on his capacity to satisfy a prior purge condition in the same

amount. *See* Appellant's brief at 18. Further, he contends that the court's

calculations of his earnings from his new employment are "shaky at best." *Id*.

at 20. Appellant focuses on the fact that, even though he had worked for over five weeks, he had only been paid three weeks' worth of wages at the time of sentencing. *Id*. at 20-21. Bearing this in mind, as well as the fact that he paid $457.77 between the contempt hearing and sentencing, Appellant asserts that he would have been more than $200 short of the $2,000 purge. *Id*. at 21-22. As such, he maintains that the trial court did not possess evidence that he had the present ability to pay the purge amount.

On review, we find that the trial court did not abuse its discretion in concluding that Appellant had a present ability to pay the purge condition and thus avoid incarceration. The record belies Appellant's contention that the court's finding was speculative. Appellant testified that, at the time of the sentencing hearing, he had been working for over five weeks, more than forty hours per week, earning $15 per hour. *See* N.T. Sentencing, 6/7/23, at 4, 7. He further testified that he lived with his mother, paying her no rent or other living expenses. *Id*. at 10-11. The court specifically rejected Appellant's contention that his net earnings per paycheck totaled only $600. Insofar as the record supports the trial court's credibility determination, it is unassailable. *B.K.P. v. J.R.B.*, 303 A.3d 456, 459 (Pa.Super. 2023) ("This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it."). As calculated by the trial court, Appellant had earned $3,000 before withholdings at the time of his sentencing hearing. For these reasons, the certified record supports the trial court's finding that

Appellant possessed the present ability to pay the $2,000 purge condition when it was imposed. *See Childress v. Bogosian*, 12 A.3d 448, 466 (Pa.Super. 2011) (holding that the trial court did not abuse its discretion in finding a present ability to pay, as evidence existed in the record to support this determination). Accordingly, the trial court did not abuse its discretion in setting the $2,000 purge condition.

Order affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>08/09/2024</u>