J-A18035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LINDSAY M. WHOLAVER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANKLIN T. WHOLAVER, JR. | : | |
| | : | |
| Appellant | : | No. 1026 WDA 2022 |

Appeal from the Order Entered August 23, 2022
In the Court of Common Pleas of Clearfield County Civil Division at
No(s):  2020-414-CD

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:           **FILED: November 8, 2023**

Franklin T. Wholaver, Jr. (Husband) appeals the contempt order issued by the Clearfield County Court of Common Pleas.  The trial court had previously directed Husband to list for sale the marital residence, which he co-owned with Lindsay M. Wholaver (Wife).  The court determined that Husband refused to list the house for sale, and it found him in contempt.  On appeal, Husband challenges the court's contempt determination and resulting sanction.  Separately, Husband claims that the certified transcript of the contempt hearing was inaccurate.[1]  We affirm.

---

[1] Husband timely filed a separate appeal concerning the transcript issue.  ***See*** 25 WDA 2023.  This Court then issued a Rule to Show Cause, seeking clarity as to whether the trial court's transcript ruling constituted a final, appealable order.  Husband explained that, while the transcript issue could be fairly construed as a subsidiary issue of the contempt decision, he could not have known about the alleged defective transcript until he obtained it as part of his
*(Footnote Continued Next Page)*

The relevant factual and procedural history is as follows. Wife filed for divorce in March 2020. In February 2022, while equitable distribution litigation was still pending, Wife petitioned for special relief, requesting that the marital residence be listed for sale. After a hearing, the trial court granted Wife's petition and ordered Husband to list the house. *See* Order of Court, 3/16/22. Relevant to this appeal is the directive that Husband had to contact Ryen Realty within a week to initiate the process. Any proceeds from the sale would be held in escrow pending a decision on equitable distribution. Husband filed for reconsideration, which the court denied.

Three months later, in June 2022, the parties' equitable distribution claims were tried before a hearing officer. At that hearing, where both parties appeared with counsel, Husband requested that the marital residence be awarded to him; the hearing officer explained that the trial court's order forcing the sale of the residence could not be contradicted. The equitable distribution was continued for a second day, but in the interim, Wife filed an

_____

appeal from the contempt ruling. This Court discharged the Rule to Show Cause and took the matter under advisement.

However, Husband did not file a brief on the transcript docket (25 WDA 2023), causing this Court to subsequently dismiss the transcript appeal. Only later did it become apparent that Husband neglected to file a brief on the transcript docket, because he had already filed a consolidated brief on the instant contempt docket (1026 WDA 2022). In that brief, Husband addressed both the contempt issues and the transcript issue. Wife followed suit in her appellee brief.

Having the benefit of the full appellate procedural history, we conclude that Husband preserved the transcript claim.

- 2 -

emergency petition for civil contempt, wherein she alleged that Husband refused to comply with the March 2022 order compelling him to list the house for sale.

On July 19, 2022, the trial court held a consolidated hearing to resolve the contempt matter, as well as an ancillary custody issue. After resolving the custody issue, the court turned to the contempt matter:

| The court: | I'll consider the record closed with regard to [the custody] issue. What about the other matter? That is the petition for civil contempt for disobedience of a court order. What do you want to tell me or present in regards to that? |
|---|---|

N.T., 7/19/22 (Day 1) at -39-40.

At that point, Wife's counsel outlined her case. She began with a brief overview of the procedural history. Noting Husband's noncompliance and that the house had yet to be listed with Ryen Realty, Wife's counsel explained that Wife had contacted the company to see if it was waiting on information from her. Counsel noted that Husband had a history of not following orders, even after he was told to comply. Counsel added that, not only did Husband fail to comply with the order, but he actually requested an award of the residence at the subsequent equitable distribution hearing. Wife's counsel concluded that Husband refused to obey the court order, which caused Wife to incur counsel fees. *See id.* at 40-41.

After this summary, the trial court asked if Wife's counsel intended to submit a proposed bill for legal services – *i.e.*, whether she sought counsel fees as a remedy. *Id.* at 41. Wife's counsel answered in the affirmative, and the court then said to Husband's counsel:

| The court: | I am assuming that [Wife's counsel] wants this [bill] introduced as an exhibit, so I believe if you wish that you do have the right to question her as to this bill. Do you wish to do so? |
|---|---|
| Husband's counsel: | I would, Your Honor, whenever it's time for me to do so. |
| The court: | Let us mark this as Plaintiff's Exhibit 1. I am going to need to take a quick recess. |
| Husband's counsel: | Your Honor, *if she is resting*,[2] I am going to make a motion to dismiss this petition right away, perhaps even before we go to break if I could, and I could [elicit] as to why? |
| The court: | Please do. |

*Id.* at 43 (emphasis added) (footnoted added).

Husband's counsel then explained that he was moving for dismissal because Wife, having rested her case, "failed to establish a right to relief" – *i.e.*, failed to set forth the *prima facie* elements of contempt. *Id.* at 44; *see*

_____

[2] Husband argues that this is where transcript is defective. According to Husband, the transcript "intentionally or negligently" omits a passage where Wife's counsel indicated, clearly and affirmatively, that she was resting her case.

*also* Husband's Brief at 36. After Husband's oral motion to dismiss, the trial court stated:

| | |
|---|---|
| The court: | All right. So what we are going to do --. |
| Wife's counsel: | If you want testimony, Your Honor, I will gladly do that. |
| The court: | We are going to continue this. You are going to have to bring [the] realtor in here. You are going to have to line up anybody that you have. If that is the way that we are going to do it, then that is the way we are going to do it. I imagine that you will then have to amend your contempt petition to include further --. |
| Wife's counsel: | Additional fees, Your Honor. Absolutely. |
| The court: | Okay. Let us do this order. [The court then issued the continuance order on the record.] |

*Id.* at 44-45.

Husband objected to the continuance, which the trial court noted. The court then presided over the second day of the contempt hearing on August 18, 2022. After hearing evidence and testimony, the court found Husband was in contempt. *See* Order of Court, 3/18/22. The court sanctioned Husband by sentencing him to a ten-day period of incarceration. The term was to begin a few weeks later, on September 16, but the court set a hearing

the day before, on September 15, to determine whether Husband purged himself of the contempt by signing the requisite documentation to list the residence for sale. Separately, the court sanctioned Husband for his contempt by ordering Husband to pay Wife's counsel fees, amounting to $3,015. *Id.*

Husband worked with the real estate company to list the house, thereby purging himself of that aspect of the contempt order, before the term of incarceration could begin. Husband asked the trial court to stay the counsel fees provision, which the court granted. Husband then appealed the contempt order.

Husband's counsel alleges that when he received the transcript of the contempt proceedings, he realized that the transcript did not include the passage where Wife's counsel indicated, affirmatively, that she was resting her case. Husband then filed an objection and subpoenaed the court reporter. The court held a hearing and solicited briefs from the parties. The court reporter testified that she reviewed her notes from the contempt hearing and that the transcript, as published, was accurate. The court overruled Husband's objection to the transcript. As noted above, Husband then filed a second appeal regarding the transcript issue.

Husband sets forth the following nine issues, which we reorder for ease of disposition:

> 1. Did the trial court err by not properly ruling on Husband's Motion to Dismiss after Wife rested her case?

2. Did the trial court abuse its discretion by making a *sua sponte* ruling objection to continue the hearing and allow Wife to reopen her case?

3. Did the trial court err by not properly ruling on Husband's Objection to filed transcript?

4. Did the trial court err by not finding the order was "clear, definite and specific"?

5. Did the trial court abuse its discretion by finding a violation of its order without proper evidence or foundation as to when Husband contacted the realtor?

6. Did the trial court err by not making proper findings to find Husband in contempt?

7. Did the trial court err by making improper evidentiary rulings during the hearing on evidence that pertained to "wrongful intent"?

8. Did the trial court err by awarding an unreasonable amount of attorney's fees as punishment for contempt?

9. Did the trial court err by not finding beyond a reasonable doubt that the purge condition of paying attorney's fees could be accomplished?

Husband's Brief at 9-10 (style adjusted).

Husband's first three appellate issues concern the allegedly defective transcript and the trial court's procedure during the first day of the contempt hearing. We address these matters contemporaneously. Our analysis begins by observing the court's procedure.

The hearing on July 19, 2022, was a consolidated hearing on both custody and contempt. At the start of the custody portion of the hearing, Wife's counsel asked whether the court would like to proceed by "testimony or argument." **See** N.T., 7/19/22 (Day 1) at 3. The court replied, "If you wish

to present testimony, we can do that." *Id.* The court then conducted a traditional evidentiary hearing. Upon the conclusion of the custody portion, the court moved onto the contempt matter. However, there was no inquiry whether counsel should proceed by "testimony or argument." *See supra*; *see also id.* at 43. The court simply asked Wife's counsel: "What do you want to tell me or present in regards to [the contempt matter]?" *Id.*

As we detailed above, Wife's counsel summarized her allegations and presented her bill for bringing the contempt matter. Husband then moved to dismiss, claiming Wife did not prove contempt as a matter of law because Wife rested her case without introducing testimony or evidence. The court denied Husband's motion and continued the contempt matter for a full evidentiary hearing. On appeal, Husband claims the court's decision to continue the case was also an error.

In its Pa.R.A.P. 1925(a) opinion, the trial court explained its procedure regarding its handling of contempt issues:

> This court's standard procedure is to begin with legal argument on the potential issues of the case. Upon Wife's counsel concluding her legal argument, Husband moved to have the petition dismissed. However, this court found that, in the interest of justice, a dismissal would be inappropriate without first allowing Wife to present evidence and testimony on her claims of contempt. Thus, the hearing was continued so that this Court could rule on the contempt after all relevant evidence had been presented.

Trial Court Opinion (T.C.O.), at 3-4.

We begin our review by observing that the Rules of Civil Procedure shall be liberally construed to "secure the just, speedy and inexpensive determination of every proceeding to which they are applicable." Pa.R.C.P. 126. "The court at every stage of any action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." *Id.* It is well-settled that trial courts have the broad authority on this point:

> In all civil litigation, the trial judge possesses broad power and discretion to control the course of the trial. *See* 1 Standard Pennsylvania Practice 2d § 48:1 (1999 ed.). While every litigant is "entitled to a fair and impartial trial, …that does not mean that a trial [j]udge must be a 'mere moderator.'" *Keating v. Belcher*, 119 A.2d 535, 537 (Pa. 1956). "It is axiomatic that the conduct of a trial is the province of the judge." [His or her] discretion, exercised without abuse, must control." *DeFulvio v. Holst*, 362 A.2d 1098, 1099 (Pa. Super. 1976); *see also Leasure v. Heller*, 258 A.2d 855 (Pa. 1969) (trial court is allowed wide discretion to exercise control over conduct of counsel, provided court does not abuse or arbitrarily exercise its discretion).

*Daddona v. Thind*, 891 A.2d 786, 800 (Pa. Cmwlth. 2006).

Not only do we conclude that the trial court acted within its discretion, we also find Husband's arguments to be disingenuous. The trial court had broad discretion to control the proceedings as it saw fit. According to Wife, it is "customary for the trial court to hear contempt petitions by way of legal argument and attorney proffered evidence." *See* Wife's Brief at 10. Husband counters that "in a contempt case, where [Husband] could be put in jail, more than opposing counsel's word is necessary to render a decision." *See*

Husband's Brief at 35. However, it was apparent that the trial court was only prepared to proceed by attorney proffered evidence if the parties agreed. Once the court realized that the contempt issue was not going to be resolved quickly or amicably without a proper evidentiary hearing, the court continued the matter to another day. The court's rulings prejudiced neither party; in fact, the court explicitly delayed the hearing to afford both parties ample opportunity to be heard. Regardless of whether Wife's counsel indicated that she "rested," it was clear Wife never began her case-in-chief. Even if the court's decision to hear preliminary legal argument was suspect, the court avoided any potential error by continuing the matter for a full evidentiary hearing.

In sum, we conclude that the question of whether Wife's counsel "rested" is irrelevant; Husband's challenge to the accuracy of the transcript is moot; moreover, the trial court did not err when it denied Husband's motion to dismiss, or when it continued the contempt matter for a proper evidentiary hearing.

The remainder of Husband's appeal concerns the trial court's substantive contempt decision. To resolve those claims, we observe the following standard of review:

> This Court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

- 10 -

*B.A.W. v. T.L.W.*, 230 A.3d 402, 406 (Pa. Super. 2020) (citing *Thompson v. Thompson*, 187 A.3d 259, 263 (Pa. Super. 2018), *aff'd*, 223 A.3d 1272 (Pa. 2020). "In considering an appeal from a contempt order, great reliance must be placed upon the discretion of the trial judge." *Marian Shop, Inc. v. Baird*, 670 A.2d 671, 673 (Pa. Super. 1996). To that end, we note that the trial court, sitting as "the factfinder, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence." *See Commonwealth v. Stevenson*, 283 A.3d 196, 204 n.3 (Pa. 2022).

To establish that a party is in civil contempt, there must be proof by a preponderance of the evidence 1) that the contemnor had notice of the specific order that he or she is alleged to have disobeyed, 2) that the act that constituted the contemnor's violation was volitional, and 3) that the contemnor acted with wrongful intent. *B.A.W.*, 187 A.3d at 406 (citations omitted).

Instantly, the trial court concluded Wife met her burden under each prong of the contempt analysis. Husband challenges the court's findings under each element. We discuss them in turn, beginning with his fourth appellate issue. Husband argues that the March 2022 order lacked the requisite specificity to compel his compliance. *See* Husband's Brief at 45. The March 2022 Order provided, in relevant part:

> 1. The residence located at [] shall be listed for sale with Ryen Realty immediately.

> 2. [Husband] shall contact Ryen Realty within seven (7) days from [the] date of this Order to initiate the process.

Order of Court, 3/16/22, at ¶¶ 1-2.

Husband maintains that when Paragraphs 1 and 2 are read together, "it becomes confusing to a reasonable person what is expected of him to comply with the order." **See** Husband's Brief at 45. Husband maintains that it was impossible for him to know what must be done after he contacted the realty company and under what timeframe. **Id.**

The trial court called Husband's lack-of-specificity argument "ludicrous." **See** T.C.O. at 5. The court doubted that Husband even called Ryen Realty within seven days, but assuming that he did, it was obvious to the trial court that Husband did not want to house to be listed. At the hearing, Husband admitted that he did not know why it mattered if the house was sold through Ryen Realty. He also said that listing the house was not a "high priority" for him because he allegedly had offers on the table. **Id.** at 39.

After review, we find Husband's argument specious. As the trial court noted, Husband did virtually nothing. The court did not find Husband credible. It was clear that Husband understood what was required of him, and that he slow-walked the sale, not because the order was ambiguous, but because he disagreed with the court's directive. Husband's fourth issue is without merit.

Husband's fifth appellate issue dovetails with his argument that the order lacked specificity. Specifically, Husband argues that Wife did not prove he failed to comply with the order, because she did not call anyone from Ryen

Realty to be a witness. **See** Husband's Brief at 43-45. In Husband's view, the court's decision lacked a proper foundation.

Recall that when the trial court continued the contempt matter for a full evidentiary hearing, the court stated: "You are going to have to bring [the] relator in here. You are going to have to line up anybody that you have." **See** N.T. (Day 1), at 44-45. Ultimately, Wife decided to proceed only with her own testimony and Husband's testimony. On appeal, Husband maintains that, without the testimony from a witness from Ryen Realty, Wife could not prove that Husband failed contact the real estate company, per the March 2022 order. Alternatively, Husband argues the trial court afforded Wife's testimony improper weight. **See** Husband's Brief at 45.

Essentially, Husband askes this Court to re-weigh evidence. However, such is the purview of the trial court, which sits as the factfinder and passes upon the credibility of the witnesses and the weight of the evidence. **Stevenson**, 283 A.3d at 204 n.3. As such, the trial court is free to believe all, part, or none of the evidence. **Id.**

At the hearing, Wife testified that she reached out to Ryen Realty multiple times after not hearing any updates about the listing. **See** N.T., 8/18/22 (Day 2) at 13, 14. She testified that "Ryen Realty did not provide any sort of information on the residence within their system for me to comply with." **Id.** at 13. Counsel then asked Wife whether any arrangements were made to have the house listed, based on her conversation with Ryen Realty. Husband's counsel objected on grounds of hearsay, and the trial court

sustained the objection. On cross-examination, Husband's counsel asked Wife if she had actual knowledge of whether Husband contacted Ryen Realty. Wife testified: "Without putting hearsay in as an objection, I am unaware of that happening, to the best of any knowledge, with the company." *Id.* at 21. Wife stated, however, that she asked Husband on several occasions whether he contacted Ryen Realty. Husband told Wife to worry about herself. *Id.* at 14. Notwithstanding the sustained hearsay objection, Wife was able to testify that she reached out to the company on multiple occasions, including six weeks before the hearing, and that the residence was still not listed by the company. *Id.* 16. Meanwhile, Husband testified: "I can't force Ryen Realty in how quickly they move. I contacted them. I asked for [a sale agreement to list the house], and there is nothing more I can do at that end." *Id.* at 33.

In its Rule 1925(a) opinion, the trial court explicitly found Wife to be credible. *See* T.C.O. at 5. In turn, Wife's testimony served as a sufficient basis for the court to infer that Husband failed to abide by the March 2022 order. The court ordered Husband to initiate the process in March 2022, and five months later, at the time of the August 2022 contempt hearing, the house was not listed. Husband's fifth issue is without merit.

Husband's sixth appellate issue concerns the third prong of the contempt analysis, namely whether Husband acted with wrongful intent. Husband argues that the trial court was only concerned with whether he violated the order, not whether he acted with requisite state of mind. *See* Husband's Brief at 40-43. In other words, Husband argues that the court

completely skipped the third prong of the contempt analysis. Contrary to Husband's characterization, however, the trial court was clear, both in its order and in its Rule 1925(a) opinion that Wife proved all three elements of contempt. *See* T.C.O. at 5; *see also* N.T. (Day 2) at 40 ("Defendant has failed *and refused* to contact Ryen Realty…"). Thus, the court did not misapply the law by neglecting the intent element, and this argument fails.

In his seventh appellate issue, Husband advances a separate challenge to the trial court's wrongful intent finding. Husband dresses this contention as an evidentiary claim. Specifically, he argues that the trial court erred when it prevented him from testifying (and eliciting Wife's testimony on cross-examination) about why he did not take more active steps to list the house. *See* Husband's Brief at 42-43.

To explain, Husband's position was that, if he failed to exercise diligence in his communication with Ryen Realty, it was only because he had already received two offers on the house – one from a friend, and one from a neighbor. Husband maintains that he wanted to entertain these offers first to avoid paying a commission to a realtor, thereby maximizing the net profit (or minimizing the loss) to the marital estate.

During his cross-examination of Wife, Husband sought to elicit Wife's concessions on these points. *See generally* N.T. (Day 2) at 21-22. Then, during his direct examination, Husband sought drive the point home. The trial court entertained these arguments briefly, before ultimately directing Husband to move on. In the trial court's view, whether Husband received

- 15 -

other offers was irrelevant. *Id.* at 22-23. On appeal, Husband concludes that this line of questioning was relevant, and the court's exclusion of the same constituted an abuse of discretion.

To resolve this claim, we first recognize that the admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. *Wilson v. Smyers*, 284 A.3d 509, 514 (Pa. Super. 2022) (citation omitted). We reiterate that an abuse of discretion is not merely an error of judgment, but, *inter alia*, an exercise of judgment that is manifestly unreasonable. *Id.*

We discern no abuse of discretion for two reasons. First, it did not appear to the trial court that Husband had acted in good faith.[3] If the offers were legitimate, Husband could have simply sought the court's leave to proceed without Ryen Realty. Husband admitted that he did not take this course of action. *See* N.T. (Day 2) at 29-30. Indeed, Wife testified that she would have been amicable to a sale-by-owner, except that she did not believe that the offers from Husband's friend and from the neighbor were real:

> Wife:   It's not that I refused to accept [the offers], I asked
>          [Husband] a multitude of times, to provide me with
>          an actual offer of sale on the home. I am not going

---

[3] "If the alleged contemnor is unable to perform and has in **good faith** attempted to comply with the court order, contempt is not proven." ***In re Estate of DiSabato***, 165 A.3d 987 at 992 (Pa. Super. 2017) (emphasis original).

> to agree to sell a home in a one-sentence message through [a co-parenting app], no. […]
>
> If he was sincere on selling the house, yes. I asked for a formal agreement to be provided [to my attorney], and we'd go from there. I never said that I was going to not accept any offer. I actually asked him to proceed to the next step.

*Id.* at 21-23.

Five months had elapsed between the March 2022 order directing the sale and the August contempt hearing. Quite plainly, the trial court did not believe Husband's claims that there were actual offers, let alone that a sale-by-owner was imminent. The court entertained Husband's position for a while, but when it told Husband to move on, we cannot say that the court's ruling was manifestly unreasonable.

The second reason we discern no abuse of discretion is more straightforward. Whether Husband could have received a better price, without going through Ryen Realty, was no longer the question. On March 16, 2022, the court issued an order to facilitate the sale of the house as fast as possible to stop the drain on the marital estate. At that point, Husband had to follow the court's process. *See Stevenson*, 283 A.3d at 205 ("contempt of court is the obstruction of the court's orderly process."). He failed to do so. Husband's seventh claim is without merit.

Husband's eighth and ninth appellate issues concern the trial court's remedy for Husband's contempt – namely, the imposition of counsel fees as a

sanction.[4]   The purpose of awarding counsel fees in this context is "to reimburse an innocent litigant for the expenses the conduct of an opponent makes necessary, such as the cost of the contempt hearing, so it can be coercive and compensatory but it cannot be punitive."  ***Thomas v. Thomas***, 194 A.3d 220, 226 (Pa. Super. 2018) (citation omitted).  We review an award of contempt sanctions in the form of counsel fees for an abuse of discretion.  ***Id.*** (citation omitted).

Husband claims that the trial court's award of counsel fees was unreasonable.  ***See*** Husband's Brief at 46.  The total award was $3,015.  Because Wife's counsel represented during the initial argument that she charged a flat fee of $2,500, Husband claims that any amount over that was unreasonable.  Husband also argues that counsel's fees were inflated, and that Wife's counsel never expected her client to pay these extra fees.  Husband calls it "a convenient method to swindle [Husband] out of more money." ***Id.*** at 47.

We disagree.  The bill from Wife's counsel appropriately reflects the fact that the contempt hearing was continued to a second day.  Although Husband cites the brevity of the evidentiary hearing (approximately an hour), the fees

_____

[4] As a preliminary matter, we note that both parties misattribute the source of the trial court's award.  In their Briefs, the parties cite 42 Pa.C.S.A. § 2503 (Right of participants to receive counsel fees).  However, "[a]n award of attorney's fees as a sanction in a civil contempt case is separate an apart from the statutory provisions for attorney's fees under 42 Pa.C.S.A. § 2503." ***Thomas v. Thomas***, 194 A.3d 220, 226 n.3 (Pa. Super. 2018) (citation omitted).

were not just for the temporal length of the hearing, but also accounted for preparation of the documents and the hearing, as well as incidental expenses Wife incurred due to Husband's failure to initiate the sale process with Ryen Realty. Nothing in the record suggests that the award was punitive or otherwise unreasonable, and thus we discern no abuse of discretion.

Husband also challenges the award, because the court did not first establish, beyond a reasonable doubt, that he had the ability to pay the counsel fees. For support, Husband relies on our Supreme Court's decision in **Barrett v. Barrett**, 368 A.2d 616 (Pa. 1977). There, the High Court held that, to impose civil contempt, the court must be convinced **beyond a reasonable doubt**, from the totality of evidence, that the contemnor has the present ability to comply with the order. **See Barrett**, 386 A.2d at 621. According to Husband, "[s]ince the order, as crafted, could have put [Husband] in jail until such time as he paid [the award], the trial court had to have made a finding beyond a reasonable doubt of [Husband's] present ability to pay the attorney's fees." **See** Husband's Brief at 48. According to Husband, the court erred when it failed to make such findings, either in its order or in its Rule 1925(a) opinion.

Husband's reliance on **Barrett** is misplaced. Critically, his argument is predicated on the assumption that his threatened incarceration was based on nonpayment of counsel fees. But that was not what the trial court ordered. Husband only faced incarceration if he did not show that he had listed the property for sale with Ryen Realty. **See** Order of Court, 8/18/22 at ¶4.

Because Husband did not face imprisonment for the nonpayment of the counsel fees, the court did not first have to establish, beyond a reasonable doubt, that Husband had the present ability to pay those fees. *See Barrett*, 386 A.2d at 621. ("Since to condition a person's avoidance of or release from imprisonment on his performing acts beyond his power to perform in in effect to convert a coercive sentence into a penal one without the safeguards of criminal procedure, we are of the opinion that the stricter evidentiary standard of the criminal law should apply with regard to the issue of present ability."); *see generally B.A.W.*, 230 A.3d at 408.

In the context of this case, the sanction of fees was compensatory in nature. Even if the sanction might be construed as coercive in nature, the sanction could not evolve from coercive to punitive (*i.e.*, penal), because at least at this point in the litigation, Husband did not face imprisonment if he failed to pay the fees.[5] Because the heightened standard was not triggered, Husband's final claim is without merit.

In sum: the trial court did not err when it continued the contempt matter for a full evidentiary hearing; the accuracy of the transcript was immaterial, thereby rendering moot the court's decisions involving the same; the court did not abuse its discretion when it determined Wife met her burden and proved all three elements of the contempt analysis; the court's imposition

---

[5] Of course, assuming Husband is unable to pay the counsel fee award, he would have available an affirmative defense if/when Wife seeks further redress for his subsequent non-compliance. *See*, *e.g.*, *In re Estate of DiSabato*, 165 A.3d at 992.

of counsel fees, as a sanction for contempt was reasonable; because Husband did not face incarceration upon any nonpayment of fees, the court did not first have to establish, beyond a reasonable doubt, that Husband had the present ability to pay the fees.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/08/2023