J-A08041-17

2017 PA Super 185

| | | |
|---|---|---|
| IN RE: ESTATE OF HELEN J. DISABATO, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: PETER DIGIOVANNI | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 692 EDA 2016 |

Appeal from the Order Entered February 3, 2016
In the Court of Common Pleas of Chester County
Orphans' Court at No(s): 1506-0528

BEFORE: PANELLA, LAZARUS, JJ., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED JUNE 13, 2017**

*Pro se* Appellant, Peter DiGiovanni, challenges the Order entered by the Court of Common Pleas of Chester County, Orphans' Court division, finding him in "continuing contempt" for his failure to make scheduled payments to an estate for which he previously acted as administrator. We affirm.

On December 18, 2015, and February 3, 2016, the Orphans' Court of Chester County entered Orders declaring Appellant Peter DiGiovanni to be in continuing contempt of the court's previous Orders of July 18, 2012, August 6, 2013, and July 29, 2014. The previous Orders directed DiGiovanni to pay $500.00 per month to the Co-Executors until he paid off a $29,279.55 debt

_____

[*] Former Justice specially assigned to the Superior Court.

representing costs and fees incurred by the Estate in succeeding DiGiovanni as executor/administrator back in 2007.[1]

As for the July 18, 2012, Order, DiGiovanni argued that the court expressly acknowledged that he had no present ability to comply with the Order and directed him to liquidate property declared exempt from his Chapter 7 bankruptcy proceedings. Of note, Appellee's Co-Executors had previously prevailed upon the bankruptcy court that DiGiovanni's debt to the estate was non-dischargeable because it was caused by DiGiovanni's willful behavior and misconduct.

DiGiovanni argued that the trial court's July 18, 2012, Order wrongfully imposed a new financial obligation upon him. On direct appeal, this Court affirmed the trial court's Order, but it remanded the matter for the court to enter a new Order calling for the sale of items not protected under the federal bankruptcy law.

On July 29, 2014, another hearing upon a Petition for Contempt resulted in an Order reiterating DiGiovanni's obligation to make $500 payments every month until he paid off the $29,279.55-plus-interest sum. The Order further declared that any failure of DiGiovanni to comply with this

---

[1] Then-Orphans' Court Judge Paula Francisco Ott entered two Orders finding DiGiovanni in contempt: one requiring payment of $23,070 for costs incurred in connection with the prosecution of the Demkos' contempt petition and for additional attorneys' fees incurred to complete administration; and one requiring him to pay $6,209.55 for income tax.

or any previous Order would entitle Appellee Estate, through the Co-Executors, to obtain a Review Hearing. DiGiovanni never appealed from this Order.

On January 23, 2015, Appellee requested a Review Hearing for DiGiovanni's continuing failure to comply with the Order. At the April 28, 2015, hearing, DiGiovanni admitted to receiving payments in cash for odd jobs, electrical work, and law clerking, as his license to practice law had been suspended since 2010. He actually had been eligible to seek reinstatement of his license since 2011, but he claimed he could not afford the approximately $4,500 in costs and fees necessary to accomplish reinstatement.[2]

Near the conclusion of the hearing, the Orphan's Court summarized the frustration of DiGiovanni's chronic failure to make regular payments despite every appearance that he possessed the ability to earn more income than he was earning:

> **THE COURT:** Okay. The conundrum for me, Mr. DiGiovanni, is you have never denied, at least not recently, that you owe the money, that it should be coming in on a regular basis and that you need to be working in order to do that, and then the wheels fall off, and frankly I am not inclined to keep awarding counsel fees, it's just not – there comes a point at which it is completely counterproductive.

_____

[2] Given the suspension of DiGiovanni's law license and his election not to seek its reinstatement, we disapprove of his use of the title, "Esquire," in his filings with this Court.

> On the other hand, I have not found the approach or the sanction that seems to really work and seems to be the motivation that there tended to be in order to have you make payments that you're called to make, which payments, by the way, were a tremendous break from the lump sum that was due, and I recognize that.
>
> I mean, receiving a $500 a month [obligation] over time when the principal amount is somewhere in the $28,000 range, that a long time it's going to take, but I want the Demkos to be made – the estate to be made whole, if at all possible.
>
> We have been through a lot. We've been through bankruptcy, we've been through cyclical inability to obtain any kind of work, and I think one of the frustrations, Mr. DiGiovanni, is that you do a pretty darn good job of putting together information for the Court when push comes to shove. Your exhibits are clear, your tax return's clear. I mean, I know that's a program, but nonetheless, you work with attorneys who find your work sufficiently good that they're willing to have you come back and do more for them.
>
> …
>
> So obviously you're capable, the question is now how do we turn that into something that gets you out of my courtroom, out of my hair, out of their hair and gets you out from under this obligation, and I'm listening for suggestions at this point because counsel fees haven't done anything.

N.T. 4/18/15 at 195-97. The court later declared that it did not "have any questions really at this point that Mr. DiGiovanni's in continuing contempt." N.T. at 202.

Counsel for Appellee then suggested the option of a civil contempt Order with a conditional jail sentence giving the contemnor the opportunity to purge the contempt and avoid the sentence by compensating Appellee with payment of a designated amount based on his present ability to pay. N.T. at 197. Counsel reminded the Court that its predecessor in this case,

- 4 -

Judge Ott, ordered the incarceration of DiGiovanni on similar terms, and he managed to come up with the necessary funds at that point to purge his contempt. Counsel posited that DiGiovanni does not take his obligation to the Estate seriously and believes he can "talk his way out of just about anything." N.T. at 198. He therefore asked the court to impose the sanction of civil contempt incarceration with a purging condition.

DiGiovanni immediately opposed the suggestion, arguing that the option is exclusive to matters involving contempt of child support Orders. Counsel for Appellee Estate cited a case authorizing the mechanism to enforce compliance with an agreement, but the Court noted that the statute relied upon in that case was also found in the Divorce Code.

The Court then commented on how DiGiovanni's obvious skill in practicing law only reinforces its belief that more needed to be done to motivate him into meeting his obligations:

> **THE COURT:** I find your acumen remarkable, Mr. DiGiovanni. I mean, I have lawyers who practice in front of me all the time who wouldn't have thought right off the bat that that isn't actually authorized by the support laws that were – I mean, you know, not that anybody's ever [decided in this respect], but you're no dummy, okay, so it appears you've got acumen, you've got skills.

N.T. at 203. With that observation, the court found it reasonable to insist that DiGiovanni expand his paralegal/clerking services—if he will not seek reinstatement to the bar—and use the proceeds to pay off this debt at the rate of $500 a month consistent with the prior Order. N.T. at 204-205. The

court also noted the display of "help wanted" signs in town if DiGiovanni was in need of additional work, regardless if it was not commensurate to his education, to meet his obligations.

The Court concluded by giving DiGiovanni 10 days to submit authority-based argument that civil contempt incarceration was unauthorized in this context. The record is silent on whether DiGiovanni filed a submission with the Court.

On December 18, 2015, the Orphan's Court entered an Order based on its findings from the April 28, 2015, hearing. The Order found DiGiovanni in "continuing contempt" for failing to make payments as directed in the previous Orders, placed him on "probation," and stated that the terms of said probation required DiGiovanni to pay $1,000 by January 5, 2016, and thereafter pay $500 by the 21st day of each month, starting in February. Failure to comply with these terms, the Order instructed, may result in the imposition of fees, costs, and fines, as well as the issuance of a bench warrant for DiGiovanni's commitment to Chester County Prison for 3 months or until such time as he purges his contempt by remitting all payments missed between the December 18, 2015, date of the Order and the date of the bench warrant.

DiGiovanni filed exceptions to the Order, but the court denied his exceptions on February 3, 2016. This timely appeal followed.

In all, Appellant DiGiovanni raises numerous issues to support two overarching themes in his appeal positing that evidence of his contempt was

lacking and the December 18, 2015, Order imposed unlawful criminal contempt sanctions. As explained below, we disagree with DiGiovanni's positions, as we find ample evidence of his continuing contempt of the court's prior Orders and conclude that the court's contempt Order aimed to compel compliance by setting forth an appropriate purging condition carefully measured in accordance with testimonial evidence relating to his present ability to pay. The purging amount, thus, did not represent a modification of the prior Orders and amounted to only one month's worth of arrearages tacked on to the scheduled December 21, 2015, payment that was nearly due. DiGiovanni had failed to pay regularly under the prior Order for eight years. We likewise reject DiGiovanni's suggestion that the imposition of probation within the Order constituted a *de facto* criminal punishment unauthorized by 42 Pa.C.S.A. §§ 4132 and 4133.[3]

---

[3] Sections 4132 and 4133 provide, respectively:

> The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:
>
> (1) The official misconduct of the officers of such courts respectively.
>
> (2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.
>
> (3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132;
*(Footnote Continued Next Page)*

The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant of judicial power under the Constitution. *Colbert v. Gunning*, 533 A.2d 471, 472 (Pa.Super.1987). The court may order civil or criminal contempt.

The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of contempt by complying with the court's directive. If he is given an opportunity to purge himself before imposition of punishment, the contempt Order is civil in nature. If the purpose of the Order is to punish despite an opportunity to purge, the Order is criminal in nature. *Id.*

*(Footnote Continued)* ─────────────────

Except as otherwise provided by statute, the punishment of commitment for contempt provided in section 4132 (relating to attachment and summary punishment for contempts) shall extend only to contempts committed in open court. All other contempts shall be punished by fine only.

42 Pa.C.S.A. § 4133.

In *Stewart v. Foxworth*, 65 A.3d 468 (Pa.Super. 2013), this Court recognized that

[v]iolations of section 4132 are viewed as criminal contempt. To find direct criminal contempt:

There must be proof beyond a reasonable doubt of (1) misconduct; (2) in the presence of the court; (3) committed with the intent to obstruct justice; and (4) that obstructs the administration of justice. Misconduct is behavior that is inappropriate to the role of the actor. Wrongful intent will be found where the contemnor knows or reasonably should be aware that his conduct is wrongful.

*Id.* at 471-72.

A court may exercise its civil contempt power to enforce compliance with its Orders for the benefit of the party in whose favor the Order runs but not to inflict punishment. *Id.* A party must have violated a court Order to be found in civil contempt. [*Goodman v. Goodman*, 556 A.2d 1379, 1391 (Pa.Super. 1989)]. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court Order. *C.R. by the Guardian of her Estate, Dunn v. The Travelers*, 626 A.2d 588, 592 (Pa.Super. 1993).

However, a showing of non-compliance is not sufficient in itself to prove contempt. *Wetzel v. Suchanek*, 541 A.2d 761, 762 (Pa.Super. 1988). If the alleged contemnor is unable to perform and has in *good faith* attempted to comply with the court Order, contempt is not proven. *Id.* (emphasis in original). The alleged contemnor has the burden of proving the affirmative defense that he has the present inability to comply with the court Order. *Commonwealth ex rel. Ermel v. Ermel*, 469 A.2d 682, 683 (Pa.Super. 1983). A court cannot impose a coercive sentence conditioned on the contemnor's performance of an act which is incapable of performance. *Crozer–Chester Medical Center v. Moran*, 560 A.2d 133, 137 (Pa. 1989). To impose civil contempt the trial court must be convinced beyond a reasonable doubt from the totality of evidence presented that the contemnor has the present ability to comply with the Order. *Wetzel*, 541 A.2d at 764.

*Sinaiko v. Sinaiko*, 664 A.2d 1005, 1009 (Pa.Super. 1995) (internal quotation marks and parallel citations removed). *See also Orfield v. Weindel*, 52 A.3d 275, 278–279 (Pa.Super. 2012) ("The purpose of a civil contempt Order is to coerce the contemnor to comply with a court Order."); and *Markey v. Marino*, 521 A.2d 942, 945 (Pa.Super. 1987) (recognizing only civil contempt must contain "conditions on the sentence so as to permit the contemnor to purge himself; he must be allowed to carry the keys to the jail in his pocket.").

First, as for the alleged lack of evidence to support the court's Order, we note that the record of the April 28, 2015, evidentiary hearing shows that the Orphans' Court carefully assessed DiGiovanni's testimony relating to his present ability to meet his $500 monthly obligation. In the court's view, DiGiovanni possessed enviable legal acumen making him quite capable of earning enough money, but either his motivation or desire to do so was lacking or he was not being entirely forthright in reporting his income, as evidenced by DiGiovanni's admission to receiving cash payments for certain jobs. We find no abuse of discretion in this determination, as the record supported it and this Court made similar findings in our disposition of DiGiovanni's direct appeal in 2013.

As for whether the "probationary" mechanism within the Order reflected a criminal rather than a civil measure, several aspects to the mechanism are insightful. First, the Order clearly incorporates all findings from the April 28, 2015, evidentiary hearing, and these findings, as noted *supra*, include the court's determination that DiGiovanni had the present ability to pay the purging condition. In this regard, moreover, the purging condition amounted only to an initial payment of one months' arrearage plus an upcoming scheduled $500 monthly payment, to be followed by the resumption of the prescribed $500 per month payment schedule in the ensuing month. In this respect, the clear purpose of the Order was not to punish DiGiovanni but, instead, to compel obedience to the prior Orders and

compensate Appellee Estate for injuries resulting from DiGiovanni's continuing noncompliance.[4]

Second, although the Order's use of the term "probation" may facially suggest a criminal sanction, the probationary mechanism within the Order is clearly civil in that it simply acknowledges DiGiovanni's chronic noncompliance with the prior Orders and otherwise conforms to the requirement that DiGiovanni, as a civil contemnor, be subject to a purging amount that is within his ability to pay. As noted above, we have found the record to support the court's conclusion that DiGiovanni possessed the present ability to comply with the December 18, 2015, Order. Concomitantly, DiGiovanni produced no evidence creating a reasonable doubt that he lacked the present ability to comply with the Order.

The Order in question also addresses potential obligations in the event DiGiovanni fails to comply with the terms of his present "probation." While the Order directs that noncompliance "*may* result in the imposition of fees, costs, and fines" as well as commitment to jail subject to release upon payment of a purging amount, it is undisputed that the court imposed none of these measures as of the date of DiGiovanni's notice of appeal. It is well-settled that "until sanctions are actually imposed, an Order declaring a party

---

[4] It is for this reason, as well, that we conclude the court did not modify the terms of the prior Order through its Order of December 18, 2015, but simply exercised its power to enforce compliance with active prior Orders in the wake of DiGiovanni's intractable refusal to do so.

in contempt is interlocutory and not appealable." **See Rhoades v. Pryce**, 874 A.2d 148, 151 (Pa.Super. 2005). Thus, we decline to address this aspect of DiGiovanni's claim that the Order imposed criminal sanctions.

As we have determined that the court's December 18, 2015, Order was civil, not criminal, in nature, we reject DiGiovanni's claims charging error with the court's noncompliance with Sections 4132 and 4133 of Judicial Code, which apply exclusively to orders imposing summary punishments for contempts of court.

The record, therefore, belies DiGiovanni's contentions that the court acted without evidentiary support, unlawfully modified the terms of its prior Order, and imposed criminal contempt sanctions. The court entered its December 18, 2015, Order consistent with its authority to compel obedience to a prior Order and to compensate Appellee Estate for injuries sustained because of DiGiovanni's chronic nonpayment. Because the sanctions were tailored to DiGiovanni's ability to comply, they were strictly civil in nature and, thus, outside the ambit of Sections 4132 and 4133.

Order is AFFIRMED.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/13/2017