J-A30022-19

2020 PA Super 46

B.A.W. N/K/A B.A.C.          :     IN THE SUPERIOR COURT OF
                             :          PENNSYLVANIA
                             :
          v.                 :
                             :
                             :
                             :
T.L.W., III                  :
                             :
          Appellant          :     No. 912 MDA 2019

Appeal from the Order Entered May 22, 2019
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s):  S-3416-2009

BEFORE: DUBOW, J., NICHOLS, J., and COLINS, J.[*]

OPINION BY NICHOLS, J.:                    **FILED: MARCH 3, 2020**

Appellant T.L.W., III (Father) appeals the trial court's contempt order that imposed the sanction of incarceration pending his payment of $1,166.66, which is one-third of the cost of a court-ordered custody evaluation.  Father argues that the trial court violated his right to due process and failed to appoint counsel.  Father also claims that the trial court failed to inquire into his present ability to pay and that the trial court abused its discretion by imposing an onerous purge condition for the contempt.  Following careful review, we are constrained to vacate the order, and remand for further proceedings consistent with this opinion.

The parties are familiar with the extensive factual and procedural history of this matter.  Concerning the instant appeal, Father filed a *pro se* petition to

_____

[*] Retired Senior Judge assigned to the Superior Court.

modify custody, and a hearing officer held a custody conciliation conference on October 9, 2018. On October 10, 2018, the hearing officer recommended a custody evaluation by Dr. Joseph Sheris, with Father paying one-third of the evaluation's cost and Appellee B.A.W., now known as B.A.C. (Mother), paying the other two-thirds. On October 11, 2018, the trial court agreed and ordered as follows:

> 1. . . . The costs of the home and custody evaluations shall be $3,500.00 pus [sic] mileage; but it may increase if the issues are especially complex or numerous individuals must be interviewed.
>
> 2. The cost of the evaluations shall be borne as follows and paid to the evaluator subject to the [c]ourt's right to allocate later: Mother is to pay two-thirds and Father is to pay one-third of the evaluation costs.

Order, 10/11/18. The trial court did not state the basis for the $3,500 cost of the evaluations.[1]

In relevant part, because Father failed to pay, the trial court granted several extensions of time. Consequently, because the custody conciliation officer notified the trial court that Father failed to comply, the trial court scheduled a rule to show cause hearing for May 9, 2019. Order, 3/27/19. The trial court's order advised Father "to show cause why [he] should not be held in contempt for failure to comply with [the prior payment orders], which, after

---

[1] There is no apparent statutory authority for the fees.

hearing, may result in sanctions, including possible incarceration and fines."

*Id.*

On May 9, 2019, a custody hearing officer held the rule to show cause hearing in which Father was *pro se*, and Mother was represented by counsel. No trial judge was present.

At the proceeding, the hearing officer asked Father when he last worked. N.T. Hr'g, 5/9/19, at 3. Father responded that he had worked last week as a handyman on an as-needed basis, but that it was not a steady job. *Id.* at 4. The hearing officer asked Mother's counsel for Mother's position, noting that even if Father was jailed, the custody evaluation fee would not get paid. *Id.* Mother's counsel agreed but noted that Father took a vacation in Florida. *Id.*[2] The hearing officer asked Father how he could afford it. *Id.* Father noted that Father's sister paid for the flight and that he was visiting his own father for the first time in ten years. *Id.* at 4-5. Father, however, said he did not have any documentation that his sister paid for the flight but that he could get it. *Id.* at 5.

The hearing officer responded as follows:

Well, today is the day you were supposed to have it. So I guess my recommendation's going to be that you be held in contempt and that you be given a date to pay it by, which will be really quick, like a week or something. And if you don't do it in that

---

[2] Although the record did not establish when Father took his vacation, the trial court's order found that Father took his vacation "recently." Order, 5/22/19.

time, you'll be directed to go to Schuylkill County jail and serve some time in jail.

[Father]. And that's going to—

[Hearing Officer]. Well, make you be in and out of jail until you pay it.

[Father]. That's what it is? I don't make the income in order to save the money to pay for it.

*Id.* at 5-6. The hearing officer observed that Father had seven months within which to save $1,100, and Father countered that he had his income tax return and he makes $900 per month. *Id.* at 6. Father claimed that his accountant needed to file an extension before he could receive his tax refund. *Id.*

The hearing officer concluded:

Well, you might be able to borrow against it or whatever. Until then, my recommendation is what I said. And you can take whatever action you think is appropriate for the refund, if you can expedite it or whatever. Okay. I have to run it by [the trial judge]. Thank you.

*Id.* at 6-7. On May 16, 2019, the hearing officer, in an interoffice memorandum addressed to the trial judge, attached the proposed contempt order stating his belief that Father "is willfully refusing to pay for" the custody evaluation. Interoffice Mem., 5/16/19.

On May 22, 2019, the trial court signed the hearing officer's proposed order, which briefly discussed the several extensions of time Father received to pay his share. The order stated that Father was working part time, paying for his living expenses, and recently flew to Florida. Order, 5/22/19. The order ended with, "[u]nder these circumstances, and considering that [Father]

- 4 -

has had over seven months to comply, the **hearing officer finds** that [Father's] failure to pay for his evaluations has been willful." *Id.* (emphasis added). The trial court's order held Father in contempt, informed Father that he could purge the contempt by paying $1,166.66,[3] to the custody evaluator by May 30, 2019. *Id.* The trial court ordered that if Father failed to pay by the deadline, then

> he shall report to [county prison] on May 31, 2019 at 4:00 p.m. to serve 48 hours in prison and shall report each subsequent Friday at 4:00 p.m. to serve 48 hours until after the end of the weekend of August 2, 2019, or until he pays the amount due, whichever shall first occur.

*Id.*

Father retained counsel, who timely filed a notice of appeal on June 5, 2019. Counsel also filed a Pa.R.A.P. 1925 concise statement of errors complained of on appeal that same day. *See* Pa.R.A.P. 1925(a)(2), (b). On June 6, 2019, Father filed an application for an emergency stay of the trial court's May 22, 2019 order in this Court, which this Court granted on June 19, 2019.

On appeal, Father raises the following issues, which we reordered for review:

> 1. Did the trial court commit an error of law and violate Father's right to due process when it found him in contempt without holding a hearing and delegated its authority to a hearing officer?

---

[3] The order actually stated $1,**6**66.66, which is a typo, as the amount at issue is $1,**1**66.66 (one-third of the $3,500 custody evaluation fee).

2. Did the trial court commit an error of law when it failed to appoint counsel for Father once it determined Father faced incarceration for contempt?

3. Did the trial court abuse its discretion when it found Father in contempt without adequately inquiring into Father's present ability to comply with the order to pay costs?

4. Did the trial court abuse its discretion when it imposed a purge condition that Father could not meet?

Father's Brief at 5.

Initially, Father argues that the trial court cannot delegate its authority to hold people in contempt to a hearing officer. *Id.* at 17. Father cites ***Sirio v. Sirio***, 951 A.2d 1188 (Pa. Super. 2008), for two supporting propositions: (1) a trial court cannot designate a hearing officer to make findings of fact; and (2) a trial court is required to "conduct a complete and independent review of the evidence when ruling on exceptions." *Id.* at 18 (quoting ***Sirio***, 951 A.2d at 1196). In Father's view, the trial court improperly transferred its contempt power to the hearing officer, pointing out that the court's order stated that "the **hearing officer** finds that [Father's] failure to pay for his evaluations has been willful." *Id.* at 18-19 (emphasis in original). Father contends the order establishes that the trial court failed to render its own findings of fact and conclusions of law. *Id.* at 19. Father also claims that the trial court improperly expanded the authority of a hearing officer to determine contempt. *Id.* at 20.

The standard of review is well-settled:

This court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

In order to establish that a party is in civil contempt, there must be proof by a preponderance of the evidence that the contemnor had notice of the specific order that he or she is alleged to have disobeyed, that the act that constituted the contemnor's violation was volitional, and that the contemnor acted with wrongful intent.

**Thompson v. Thompson**, 187 A.3d 259, 263 (Pa. Super. 2018) (citation omitted), *aff'd*, ____ A.3d ____, No. 36 WAP 2018, 2020 WL 355372 (Pa. filed Jan. 22, 2020).[4]

In **In re Estate of DiSabato**, 165 A.3d 987 (Pa. Super. 2017), this Court stated:

The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant of judicial power under the Constitution. The court may order civil or criminal contempt.

The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of contempt by complying with the court's directive. If he is given an opportunity to purge himself before imposition of punishment, the contempt Order is civil in nature. If the purpose of the Order is to punish despite an opportunity to purge, the Order is criminal in nature.

---

[4] The parties agree that the order at issue addresses civil contempt. **See** Father's Brief at 16; Mother's Brief at 12. **Cf. Commonwealth v. Moody**, 125 A.3d 1, 8-9 (Pa. 2015) (resolving challenge to finding of summary direct criminal contempt). **See generally Rouse Phila. Inc. v. Ad Hoc '78**, 417 A.2d 1248 (Pa. Super. 1979) (distinguishing criminal and indirect civil contempt).

A court may exercise its civil contempt power to enforce compliance with its Orders for the benefit of the party in whose favor the Order runs but not to inflict punishment. A party must have violated a court Order to be found in civil contempt. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court Order.

However, a showing of non-compliance is not sufficient in itself to prove contempt. If the alleged contemnor is unable to perform and has in **good faith** attempted to comply with the court Order, contempt is not proven. The alleged contemnor has the burden of proving the affirmative defense that he has the present inability to comply with the court Order. A court cannot impose a coercive sentence conditioned on the contemnor's performance of an act which is incapable of performance. To impose civil contempt the trial court must be convinced beyond a reasonable doubt from the totality of evidence presented that the contemnor has the present ability to comply with the Order.

*In re Estate of DiSabato*, 165 A.3d at 992-93 (citations omitted).

In custody and visitation actions, the Pennsylvania Rules of Civil Procedure distinguish the duties of a hearing officer from those of the trial court. *See* Pa.R.C.P. 1915.4-1, -2 (discussing custody proceedings before a hearing officer and the court); *see also, e.g.*, Pa.R.C.P. 1910.25-1, -4, -5 (distinguishing the roles of hearing officer and the trial court in support actions); *Sirio*, 951 A.2d 1196 (noting, in support action, that a trial court "cannot delegate its duty as finder of fact").[5] Rule 1915.12 provides that only

---

[5] Specifically, Rule 1910.25-1 explicitly states that upon a determination of willful noncompliance and a present ability to comply, the trial court must hear the petition for contempt "for consideration of incarceration and other appropriate sanctions." Pa.R.C.P. 1910.25-1; *see also id.* 1910.25-4, -5.

the trial court may find a respondent in contempt, and therefore, the trial court must conduct the contempt hearing and not the hearing officer. **See** Pa.R.C.P. 1915.12(d); **Garr v. Peters**, 773 A.2d 183, 189 (Pa. Super. 2001). Accordingly, in the instant custody action, we are constrained to conclude that the trial court erred by failing to convene the contempt hearing and by failing to make its own findings of fact before determining Father in contempt. **See Garr**, 773 A.2d at 189. The same is true in support actions. **See** Pa.R.C.P. 1910.25-4.

The instant trial court erred because it did not conduct its own evidentiary hearing, and instead adopted the hearing officer's **factual** determination that Father's failure to pay was willful. **See** Order, 5/22/19. For the reasons stated herein, the relevant procedural rules clearly distinguish the duties of the hearing officer from those of the trial court. Further, well-settled caselaw has emphasized that only the trial court has the authority to impose the sanction of imprisonment for contempt. **See, e.g.**, **In re Estate of DiSabato**, 165 A.3d at 992-93. Accordingly, we conclude that the trial court misapplied the law and abused its discretion. **See Thompson**, 187 A.3d at 263; **In re Estate of DiSabato**, 165 A.3d at 992. **Cf. Sirio**, 951 A.2d at 1196.[6]

---

[6] We acknowledge Father cites **Sirio** in support, but we note that case arose in the context of a support proceeding, unlike the custody proceeding in this case.

Next, we address Father's arguments in support of his second issue. Father argues that when the trial court ordered incarceration, he was entitled to appointed counsel. Father's Brief at 34. In support, Father refers this Court to *Commonwealth ex rel. Brown v. Hendrick*, 283 A.2d 722 (Pa. Super. 1971), and *Commonwealth v. Diaz*, 191 A.3d 850 (Pa. Super. 2018), among other cases. *Id.*

In *Brown*, the defendant was ordered to pay $500 in support or serve three months in prison. *Brown*, 283 A.2d at 723. The defendant filed a petition for a writ of *habeas corpus*, which was denied. *Id.* On appeal, the *Brown* Court reversed, holding that "due process of law . . . in the prosecution of contempt . . . includes the assistance of counsel . . . ." *Id.* at 724 (citation omitted).

*Diaz* involved a defendant's failure to pay court-ordered fines and costs. *Diaz*, 191 A.3d at 862. Of note is that the *Diaz* Court declined to "impose an automatic right to court-appointed counsel for all civil contempt proceedings involving an indigent defendant's failure to pay court-imposed fines and costs." *Id.* Rather, in that case, sufficient procedural safeguards existed that would prevent erroneous imprisonment. *Id.* However, the trial court failed to apply any of the relevant procedures. For example, Section 9730 requires a determination of a defendant's financial ability to pay before ordering, *inter alia*, imprisonment. *See* 42 Pa.C.S. § 9730. When such safeguards are complied with, "upon the trial court's determination at the civil contempt

hearing that there is a likelihood of imprisonment for contempt and that the defendant is indigent, the court must appoint counsel and permit counsel to confer with and advocate on behalf of the defendant at a subsequent hearing." *Diaz*, 191 A.3d at 862.

Here, the trial court set the cost of the custody evaluation at $3,500, with Father to pay a one-third share. Order, 10/11/18. The record does not establish how the trial court arrived at that figure. As in *Diaz*, the trial court imposed the cost, but unlike *Diaz*, the money is payable to a third party and not the Commonwealth. *See Diaz*, 191 A.3d at 861. Nonetheless, the trial court, much like the trial court in *Diaz*, held that Father would be imprisoned if he failed to pay. *See id.* at 862. The trial court imposed incarceration as a sanction, creating a clear likelihood of imprisonment. *See id.*; *see also Brown*, 283 A.2d at 723-24. The trial court should have then ascertained "whether [Father was] entitled to court-appointed counsel." *See Diaz*, 191 A.3d at 866. Because the trial court failed to do so, it abused its discretion. *See Diaz*, 191 A.3d at 865-66; *Thompson*, 187 A.3d at 263.

For the reasons stated herein, we vacate the trial court's May 22, 2019 order, and remand this matter to the trial court in order to conduct a *de novo* hearing to resolve the court's rule to show cause as to why Father should not be held in contempt. *See* Order, 3/27/19. If the trial court determines that there is a likelihood that Father could be imprisoned for contempt and that Father is indigent, the trial court must appoint counsel for Father. *See Diaz*,

191 A.3d at 866. Because we vacate the order below and remand for further proceedings, we need not address Appellant's remaining two issues.[7] **See Commonwealth v. Merchant**, 595 A.2d 1135, 1139 (Pa. 1991) (holding that when reversing on one issue, there is no reason to address the remaining issues); **In re D.A.**, 801 A.2d 614, 618 (Pa. Super. 2002) (same).

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/03/2020

---

[7] With respect to those remaining two issues, we note, however, that in resolving whether Father should be held in contempt, the trial court (and not the hearing officer) must address Father's present ability to pay, *i.e.*, ability to comply with the trial court's order, and Father's good faith efforts, if any, to comply. **See generally In re Estate of DiSabato**, 165 A.3d at 992. Because the trial court erred in holding Father in contempt, we need not address whether the trial court abused its discretion in imposing the purge condition, *i.e.*, paying the disputed amount by May 30, 2019.