J-A28001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CALLAN SCHANZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ALISON HUNLEY | : | No. 707 MDA 2025 |

Appeal from the Order Entered May 1, 2025
In the Court of Common Pleas of York County Civil Division at No(s):
2021-FC-002696-03

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY KUNSELMAN, J.:              **FILED: APRIL 16, 2026**

Callan Schanz (Father) appeals from the order entered by the York County Court of Common Pleas which, after reconsideration, affirmed the custody order the court entered in March 2025.  The March custody order modified the parties' custody arrangement and granted Alison Hunley (Mother) sole legal and primary physical custody of the parties' four-year-old son, S.C. (the Child).  Father was granted professionally supervised partial physical custody.  The order also found no one in contempt related to custody. After careful review, we affirm the custody order and vacate and remand for the court to fully address Father's contempt allegations.

The trial court provided the following factual and procedural history in its Appellate Rule 1925(a) opinion:

> Father lives in New York, and Mother lives in Pennsylvania.  [. . .]  Mother and Father were subject to a custody order dated October 17, 2022 that granted parents

shared legal custody, Mother primary physical custody, and Father supervised partial physical custody with limited supervision, due to Father's failure to undergo a drug and alcohol evaluation as ordered on June 28, 2022 and concerns regarding Father's use or abuse of marijuana. [. . .]

When Father took [a court-ordered] drug test, he tested positive for THC. Father later underwent a complete drug and alcohol evaluation by Spirit and Associates, as ordered, but did not complete the evaluation or submit payment prior to the trial on October [14], 2022, prompting the [trial judge] to make Father's custodial rights supervised. Spirit and Associates completed the 47-page report from Father's court-ordered evaluation on February 10, 2023 and provided it to Father. The report noted concerns regarding Father's chronic use of marijuana and minimization of the same, "risk of psychotic disorders and/or cannabis-induced psychosis symptoms," and probable cannabis use disorder.

[. . .]

The following year, in April 2024, Father undertook another drug test and a self-reporting evaluation by a different provider, Saint Joseph's Medical Center, in Yonkers, NY [] and tested positive for marijuana. Mother did not have input into Father's evaluation, which, aside from the results of the drug test, yielded a one-paragraph statement, indicating that Father is not deemed appropriate for treatment as "[h]is substance [sic] has been in remission for the last 4 years" and "[Father] has grown in several areas of his life."

On July 2, 2024, Father filed a petition for modification of custody and contempt, seeking expanded physical custody and the lifting of the supervision requirement. Father asserted that Mother returns Child in poor health, makes disparaging comments, drives with Child on her lap, etc. Mother filed a counter-petition for modification [. . . .]

At trial on January 16, 2025 and March 13, 2025 the court reaffirmed the October 17, 2022 order with a few changes, including granting Mother sole legal custody and

requiring Father's periods of supervised partial physical custody be supervised by a professional supervisor.

At trial, the court found Mother and her witnesses credible, including the *in camera* testimony of Child's half-sibling, S.H., who testified that [Father] had hit him. The court also heard testimony, without objection, from Mother's friend who provides childcare for Child that he told her that "daddy said that mommy is a bad witch, not a good witch." Also, Mother's [business] partner testified regarding seeing Father selling marijuana and violating the requirement of supervised visitation at one of the events or festivals where Mother and Father participated as individual vendors.

Father's supervisors, including his girlfriend, mother, and aunt, testified on his behalf. [All three testified positively about Father and his parenting of the Child. They testified in favor of Father's custody being unsupervised.] [. . .]

[. . .]

[. . .] The court found the testimony of Father's supervisors less credible than other testimony and evidence. Additionally, the court did not find credible the testimony of Mother's ex-husband, who also testified on Father's behalf.

Father testified and submitted the court-ordered drug and alcohol evaluation conducted by Spirit and Associates as Plaintiff's Exhibit 15 and stipulated that it was a true and correct copy of the evaluation. Father testified that he did not follow any of the recommendations in the report, noting that they were not yet court-ordered. [. . .] The court placed greater weight on the court-ordered drug and alcohol evaluation conducted by Spirit and Associates, which indicated that Father's chronic use of marijuana places him at risk of cannabis-induced psychosis symptoms that cause paranoid ideations regarding Mother, than on Father's self-reporting evaluation conducted by Saint Joseph's Medical Center. [. . .]

After considering the testimony, evidence, Father's demeanor, etc., the court denied Father's petition to find

- 3 -

Mother in contempt and required his rights of supervised partial physical custody to be supervised by a professional.

Father filed his notice of appeal on April 11, 2025 and his concise statement of errors on April 28, 2025. Father also filed a motion for reconsideration, which the court granted and held a hearing on April 28, 2025, particularly focusing on the cost of professional supervision in New York, which is far higher than in York, Pennsylvania. At the hearing, the court was willing to allow Father's supervised visits to occur in York, Pennsylvania, but Father was not willing to agree to this during the hearing. [. . .] Ultimately, the court's reconsidered order affirmed its order of March 14, 2025 unchanged, noting that this matter would be before the court again on Father's petition to modify, which Father indicated that he plans to file as [soon as the evaluator] finishes writing the report from Father's threat of harm evaluation.

Trial Court Opinion (T.C.O.), 6/26/25, at 1-9 (internal citations and footnotes omitted).

After the reconsideration order, Father timely filed this appeal. He raises the following five issues for our review, which we reorder for ease of disposition:

I.    Did the lower court err in denying Father's petition to expand his physical custody rights, at trial and following reconsideration, including removing a supervision provision, where the only evidence presented at trial showed that, over the last three years, during Father's periods of custody, there has only been normal, competent, consistent, caring and loving parenting by Father?

II.   Did the lower court err, at trial and on reconsideration, in denying Father's request to remove a supervision requirement imposed on him in 2022 based solely on his past use of marijuana, where Father lives in New York where marijuana is medically and recreationally legal, where witness testimony at trial showed that Father

- 4 -

never uses marijuana when exercising custody of the Child, where Father completed a substance abuse evaluation which revealed no need for treatment whatsoever, where Father only rarely drinks alcohol and refrains from all other substances, and where Mother presented no evidence to the contrary?

III. Did the lower court err at trial, and on reconsideration, in modifying the previous order of custody that required supervision of Father by ordinary members of his family and friends, to supervision conducted solely by a professional agency, without sufficient evidence at trial showing Father to be a risk to the Child and significant evidence to the contrary, and where the professional agency requirement is unaffordable, thus making any contact with the Child impossible due to the costs, as well as the geographic logistics where Mother and Father live (5) hours apart?

IV. Did the lower court err in entering a final custody order following trial, and on reconsideration, modifying legal and physical custody provisions of a prior order, without due process of law, by allowing Mother to testify on direct after she, *pro se*, mismanaged her time and presented at least forty (40) exhibits during the course of the testimony that lasted roughly only one (1) hour, and without providing Father's counsel any reasonable opportunity to cross-examine Mother?

V. Did the lower court err in denying Father's petition for contempt against Mother, and on reconsideration, where Mother: routinely failed to maintain reasonable and proper hygiene of the Child; drove her motor vehicle with the Child on her lap and not in a car seat; failed to exchange physical custody of the child on Father's Day 2024; habitually denied phone and video calls between Father and Child; and frequently disparaged Father in front of the Child and his siblings?

Father's Brief at 5-6 (suggested answers omitted) (parties' names adjusted to "Father" and "Mother").

We begin with our well-settled standard of review for custody matters:

- 5 -

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Wilson v. Smyers*, 284 A.3d 509, 515 (Pa. Super. 2022) (quoting *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018)). Importantly, it is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility." *Id.* at 520 (citation omitted). Further, the "evidentiary record of a custody appeal will often support a conclusion different than the one reached by the lower court." *White v. Malecki*, 296 A.3d 1210, 1215 (Pa. Super. 2023); *see also Carrero v. Lopez*, 300 A.3d 494, 501 (Pa. Super. 2023) ("In a custody appeal, the sheer fact that a trial court could have found for the appellant is not a sufficient basis to reverse the court's decision.").

In a custody-related matter, the court's "paramount concern is the best interests of the children involved." *A.L.B. v. M.D.L.*, 239 A.3d 142, 148 (Pa. Super. 2020) (citation omitted). When ordering any form of custody, a court must determine the best interest of the child by considering all relevant

factors, giving substantial weighted consideration to specific factors that affect the safety of the child.[1]  **See** 23 Pa.C.S.A. § 5328(a).

"Upon petition, a court may modify a custody order to serve the best interest of the child."  23 Pa.C.S.A. § 5338(a).  When deciding a modification petition, a trial court must evaluate the Section 5328(a) custody factors.  **See E.D. v. M.P.**, 33 A.3d 73, 80 (Pa. Super. 2011).

Relevantly, nonprofessional supervised physical custody is custodial "time during which an adult, designated by the court or agreed upon by the parties, monitors the interaction between the child and the individual with those rights."  23 Pa.C.S.A. § 5322(a).  Professional supervised physical custody is custodial time during which "a professional, with education and training on the dynamics of domestic violence, sexual assault, child abuse, trauma and the impact of domestic violence on children, oversees the interaction between the child and the individual with those custody rights and promotes the safety of the child during the interaction."  **Id.**

---

[1] In 2024, the General Assembly enacted significant amendments to the custody factors "pursuant to Act of April 15, 2024, P.L. 24, No. 8 (known as 'Kayden's Law')."  **Velasquez v. Miranda**, 321 A.3d 876, 886 n.6 (Pa. 2024).  Kayden's Law expanded the factors to be considered in the court's best interest analysis and required the court to give "substantial weighted consideration" to, *inter alia*, the "safety of the child."  **Id.** (citation omitted).  These statutory amendments took legal effect on August 13, 2024.  As the trial court entered the instant order in May 2025 and the modified custody order in March 2025, Kayden's Law applies to this appeal.

Father's first three issues challenge the trial court's decision to retain the supervision requirement for Father's custody, and to increase his supervision to professional supervision. As these issues are related, we address them together.

Father argues that he presented evidence showing his consistently strong parenting of the Child. *See* Father's Brief at 36. Father asserts that this warranted a greater share of custody, and, at a minimum, removal of the supervision requirement. *Id.* Father reiterates the testimony of his witnesses that he was an excellent parent; there had been no problems during his custodial periods; and there was no need for supervision to continue. *Id.* at 37. Father asserts his initial drug and alcohol evaluation was a snapshot from 2022, before entry of the original custody order, and was flawed. *Id.* at 37, 43. His more recent evaluation indicated he had no need for treatment. *Id.* at 43 (citation omitted). There was no evidence that Father used cannabis or any other substances in the Child's presence. *See id.* (citation omitted). There was no link between Father's use of cannabis and any negative impact on the Child. *Id.* at 39 (citation omitted). Removing the supervision requirement was in the Child's best interest to encourage a stronger bond between Father and the Child. *See id.* at 42 (citation omitted).

Father also argues that the court erred by increasing his supervision requirement to professional supervision. *Id.* at 50. Father asserts that even Mother never requested this modification. *Id.* Nobody established any deficiencies or problems with Father's nonprofessional supervisors. *Id.* at 50-

- 8 -

51. The court did not make a finding that there was an ongoing risk of abuse of the Child. *See id.* at 52. Requiring professional supervision was so expensive that it threatened to make it impossible for Father to see the Child at all. *Id.* at 50. Father asserts that the evidence of his inability to pay for professional supervision was overwhelming and uncontradicted. *Id.* at 53. The modification was not in the Child's best interests because it threatened to end or substantially reduce his contact with Father. *Id.*

The trial court explained its rationale as follows:

> Here, Father questions the sufficiency of the evidence and seeks a reweighing of the evidence. [. . .]
>
> The court denies that it abused its discretion or lacked sufficient reason to continue Father's supervised partial physical custody. [. . .] The court explained its application of Kayden's law with regard to making Father's rights professionally supervised and explained that Father would be able to return with a petition for modification as soon as his threat of harm evaluation was complete. The court also noted that Father "had a pretty dire psychological evaluation," referencing the evaluation by Spirit and Associates.
>
> As trial, the court explained its reasons for creating an order that is restrictive towards Father on the record in its analysis of the custody factors, particularly in the first and fourteenth factors.
>
> Although Father's witnesses, such as his girlfriend, [m]other, aunt, each gave testimony regarding their positive observations of Father with Child, theirs was certainly not the only testimony or evidence presented at trial regarding Father's parenting or use of substances. The court did not abuse its discretion in assessing all of the evidence and assigning weight to the evidence and making credibility determinations that it deemed appropriate.

Regarding Father's marijuana use, Father apparently faults the court for assigning less credibility to his witnesses than Mother's and greater weight to one drug evaluation over another. Father wanted the court to place greater weight on his self-reporting evaluation of April 2024 rather than on the court-ordered evaluation completed in February 2023 that conformed to the court's order of June 28, 2022. The court did not abuse its discretion in assessing the testimony or evaluating both drug and alcohol evaluations.

As outlined in the court's analysis of all the custody factors, there are various reasons that the court does not feel that Father's contact with Child should be unsupervised at this time, and the court did not err in this ruling.

T.C.O. at 13-14 (internal citations omitted).

At the custody trial, the court explained that the first custody factor, which party is more likely to ensure the safety of the Child, was the overwhelming factor for the court's restrictive order. N.T., 3/13/25, at 202. The court believed its order was necessary to ensure the safety of the Child because Father had some kind of cannabinoid and/or mental health problem. *Id.* The court stated that the Spirit and Associates evaluation of Father was quite telling. *Id.* The court noted that the evaluation was consistent with reports from Mother and witnesses along with texts and emails which all supported that Father's behavior was somewhat irrational and sometimes mean and harassing. *See id.* at 202-03.

For factor two, the court stated that Father had been at least verbally and emotionally abusive to Mother. *Id.* at 203. For factor fourteen, the court explained that although it did not doubt that Father's marijuana use was legal in New York, if Father abused marijuana, like alcohol which is also legal, to

the point that it threatens the Child's and Mother's safety, the fact that it was legal means nothing. ***See id.*** at 207. The court reiterated that the Spirit and Associates evaluation and Father's behavior on the stand and in communications were telling and consistent with the fact that he was abusing marijuana, which was perhaps resulting in some mental condition. ***See id.***

Father's argument fails to appreciate our deferential standard of review in custody matters. We must accept findings of the trial court that are supported by competent evidence of record. ***See Wilson, supra***.

Here, the trial court's findings are supported by record evidence.

One of Mother's children, S.H., testified *in camera* that Father physically abused him when he was younger. N.T., 1/16/25, at 13. S.H. stated that Father bullied Mother sometimes while on the phone with the Child. ***See id.*** at 16-17. Father insulted Mother and criticized her parenting. ***Id.*** S.H. indicated that he knew Father smokes marijuana and saw him selling it. ***See id.*** at 18.

Mother's friend testified that Father smoked and drove during calls with the Child. ***Id.*** at 31. There was a lot of noise, and Father was unfocused and not present during some calls. ***See id.*** She believed that Father was disparaging Mother to the Child, including calling Mother a "bad witch." ***See id.*** at 32-33. One time when Father was on a video call in the car, the phone fell and it looked like Father had the Child unsupervised. ***See id.*** at 32.

Mother's business partner testified she saw Father selling what appeared to be cannabis at one event, and the Child was present at some events where

she thought Father might be selling cannabis. *Id.* at 53, 56. She also saw Father violate the terms of supervised visitation by coming up to greet the Child at events without Mother's permission. *Id.* at 56-59. The business partner attended one custody exchange, and she did not see a supervisor present during the exchange. *Id.* at 62.

We acknowledge that Father disputed the allegations made above, including that he does not use marijuana or drink alcohol around the Child. *See* N.T., 3/13/25, at 96. For example, Father testified that Mother made communication incredibly difficult, alienated him from the Child, made decisions without his input, and did not take appropriate care of the Child. *See generally id.* at 56, 62-63, 80-81, 85, 90-91, 99-101. Mother's ex-husband testified that Mother abused him. N.T., 1/16/25, at 85-87. Father's girlfriend, mother, and aunt testified to Father's positive characteristics as a parent and that they had never seen Father under the influence of drugs or alcohol around the Child. *See id.* at 129, 137; N.T., 3/13/25, at 8-9, 42-43, 48-49. They all testified in favor of lifting Father's supervision requirement. *See* N.T. 1/16/25, at 138-39; N.T., 3/13/25, at 14, 48.

As to the Spirit and Associates evaluation, Father claims it is outdated. Father began the evaluation process on August 18, 2022, but the evaluator did not complete the evaluation until February 10, 2023. *See* Plaintiff's Exhibit 15, at 2. The evaluation process was substantially delayed for multiple reasons, some of which were attributable to Father, including late payments and his degree of compliance with the evaluation procedures. *See id.* at 1-2.

When the court entered the original custody order in October 2022, it did not have the benefit of this evaluation. Thus, we fail to see how the trial court erred in considering it now, when analyzing the custody factors.

Further, although Father points to the second evaluation he took in April 2024, which recommended no treatment, that was a one-paragraph evaluation with limited information. **See** Plaintiff's Exhibit 5. Conversely, the Spirit and Associates evaluation was forty-seven pages with detailed information and recommendations. **See** Plaintiff's Exhibit 15. Father admitted that he did not follow any of the recommendations in the Spirit and Associates evaluation because he believed the evaluation was erroneous and "just another filibuster" for the court. N.T., 3/13/25, at 113.

Therefore, Father and Mother both presented evidence that supported their respective positions, as is the nature of our adversarial process. We reiterate that our role as an error-correcting appellate court is not to "re-find facts, re-weigh evidence, and re-assess credibility." **Wilson**, 284 A.3d at 520 (citation omitted). We remind Father that the record in a custody appeal will often support the opposite result. **See White, supra; Carrero, supra**. That the trial court could have found in Father's favor is of no moment. And that the court found Mother and her witnesses to be more credible than Father and his witnesses and found one evaluation to be more persuasive than another is not the basis for reversible error.

As to Father's arguments regarding supervision, Kayden's Law makes clear that a court is required to give **substantial weighted consideration**

to factors 1, 2, 2.1, and 2.2 which affect the safety of the child. *See* 23 Pa.C.S.A. § 5328 (emphasis added). Here, the court stated that the first factor related to the safety of the Child was the overwhelming factor in its decision. N.T., 3/13/25, at 202; *see also M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013) ("It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." (citation omitted)). The court believed that its strict order was necessary to ensure the safety of the Child. N.T., 3/13/25, at 202. On reconsideration, the court stated that it routinely does not approve girlfriends, boyfriends, or significant others as supervisors because they are biased. *See* N.T., 4/28/25, at 12. As discussed above, Father's girlfriend, mother, and aunt all testified that they were comfortable with Father's supervision being removed. *See* N.T., 1/16/25, at 138-39; N.T., 3/13/25, at 14, 48.

Father points us to Section 5323(e.1) to support his arguments. That section provides:

> **(e.1) Supervised physical custody.--**If a court finds by a preponderance of the evidence that there is an ongoing risk of abuse of the child, there shall be a rebuttable presumption that the court shall only allow supervised physical custody between the child and the party who poses the risk of abuse. A court may find that an indicated report for physical or sexual abuse under Chapter 63 (relating to child protective services) is a basis for a finding of abuse under this subsection only after a de novo review of the circumstances leading to the indicated report. When awarding supervised physical custody under this subsection, the court shall favor professional supervised physical custody. The court may award nonprofessional supervised physical custody if:

(1) the court determines that professional supervised physical custody is not available within a reasonable distance of the parties or the court determines that the party requiring supervised physical custody is unable to pay for the professional supervised physical custody; and

(2) the court designates an adult to supervise the custodial visits who has appeared in person before the court, the individual executes an affidavit of accountability and the court makes [a] finding, on the record, that the individual is capable of promoting the safety of the child.

23 Pa.C.S.A. § 5323(e.1).

Father argues that the court did not find that there was an ongoing risk of abuse to the Child, so the preference for supervised physical custody did not apply. **See** Father's Brief at 52. Father also claims that he is unable to pay for professional supervision, so the court should have awarded nonprofessional supervision. **See id.** at 53.

However, Section 5323(e.1) does not mandate that a court find an ongoing risk of abuse to order supervised custody. Instead, it provides that **if** there is an ongoing risk of abuse, then a rebuttable presumption favors supervised custody. And when a court awards supervised physical custody under Section 5323(e.1), it shall favor professional supervision. Although here the trial court did not find an ongoing risk of abuse of the Child, it was still permitted to order professional supervised physical custody based on its evaluation of the Section 5328 custody factors. **See** 23 Pa.C.S.A. § 5323(a) ("After considering the factors set forth in section 5328 . . ., the court may

award any of the following types of custody if it is in the best interest of the child: . . . (5) Supervised physical custody.")

As for the cost of professional supervision, the court did not find that Father was unable to pay for supervision. Father claims that the evidence of his inability to pay was "overwhelming and uncontradicted," but he cites nothing in the record to support this specific assertion. *See* Pa.R.A.P. 2119(c). The only evidence he ultimately cites is that Mother admitted the cost of supervision was $200 per hour in New York and $50 to $85 per hour in York. *See* Father's Brief at 53 (citation omitted). Father notes that his counsel argued professional supervision was cost-prohibitive and unaffordable in either location. *See id.* (citation omitted). The record reveals that Father's counsel also argued that Father's business was losing money, and he was trying to keep it afloat and did not have the money for professional supervision. *See* N.T., 4/28/25, at 4, 10. Mother testified that Father reported a loss on his taxes for multiple years. N.T., 3/13/25, at 189, 191-92. Father also testified that Mother was "extorting" him for $1,400 a month in child support. *Id.* at 121.

However, Father's counsel's arguments are not evidence of record upon which we can base our decision. *See, e.g., Siravo v. AAA Trucking Corp*., 452 A.2d 521, 522 (Pa. Super. 1982) ("It is, however, an equally basic law of evidence that statements by counsel in briefs are not themselves evidence and [are] not of record." (footnote with citations omitted)). The above testimony does not constitute "overwhelming and uncontradicted" evidence of

Father's inability to pay. Father points us to no specific evidence regarding his income, expenses, debts, etc. from which we could determine that he does not have the ability to pay for professional supervision, such that reversal is warranted.

Given our deferential standard of review, on this record, we discern no abuse of discretion in the court's decision to make Father's partial physical custody of his four-year-old son professionally supervised. Father's first three issues merit no relief.

In his fourth issue, Father alleges a due process violation. "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." *S.T.*, 192 A.3d at 1160 (citation and some emphasis omitted). "Formal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, or a parent's custody of [their] child." *Id.* at 1161 (citation and emphasis omitted). "Due process is flexible and calls for such procedural protections as the situation demands." *Id.* (citation omitted).

Father argues that the trial court violated his due process right by limiting the time he had to cross-examine Mother. *See* Father's Brief at 45. Father claims that the trial court repeatedly urged the parties to move along in these proceedings. *Id.* When Mother was cross-examining Father, the court admonished her that whatever time she took to do so would limit her time to testify. *Id.* However, the court then allowed Mother to introduce

voluminous exhibits and lengthily describe her interpretation of those exhibits during her testimony, which limited Father's time to cross-examine her. *Id.* The court stated there were only nine minutes left for the trial, well before Father's counsel began to cross-examine Mother. *Id.* at 47 (citation omitted). This unfairly restricted Father's ability to cross-examine Mother, which he claims likely affected the outcome of the trial. *See id.* at 48.

The hearing transcript reveals that Father has waived this claim. Father is correct that at multiple times throughout the hearing the trial court made comments related to the length of time the trial was taking. However, the court directed these types of comments to both Father and Mother at different times. More importantly, the end of Father's cross-examination of Mother proceeded as follows:

> [Father's counsel] Q. I think we stipulated that you are a cleaning lady and have your own cleaning business, correct?
>
> [Mother] A. I own two businesses that are registered with the state.
>
> Q. What are they again, cleaning business?
>
> A. Cleaning business and the apothecary business with the vending, but I am transitioning off of the cleaning.
>
> Q. So --
>
> THE COURT: We're really -- the relevance of this is tenuous at best. Try to wrap it up.
>
> [Father's counsel]: I don't have any other questions at this point.

N.T., 3/13/25, at 193.

As is clear from the transcript, the court **requested** that Father's counsel **try** to wrap his cross-examination up. Father's counsel then responded that he had no further questions. Counsel did not object to the court's comment, ask for more time to cross-examine, or give any other indication that he felt Father's due process rights were being violated. Father also did not raise a due process violation in his motion for reconsideration or at the reconsideration hearing. The closest Father came to raising this issue at the reconsideration hearing was when his counsel stated, "And it's just, you know, to be fair, Judge, we didn't get a chance to cross-examine her at all. We didn't really have an opportunity to say much at all about her credibility that day." N.T., 4/28/25, at 10. Thus, Father has waived this claim. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); **In re S.C.B.**, 990 A.2d 762, 767 (Pa. Super. 2010) (noting the requirement of making an objection to the trial court).

Even if not waived, Father's issue would merit no relief. The trial court did not prevent Father's counsel from cross-examining Mother, order counsel to stop his cross-examination, or indicate that it would not permit counsel to continue if he had further questions. The court also did not indicate that the time Mother spent testifying about her exhibits would directly limit the time the court allowed Father to cross-examine her. Although Father refers to the "atmosphere" the court created at trial, this Court is reviewing a cold record and has no ability to ascertain what type of environment the trial occurred in.

*See De Fulvio v. Holst*, 362 A.2d 1098, 1099 (Pa. Super. 1976) (stating that "the conduct of a trial is the province of the judge"). We reiterate that due process is flexible. *See S.T., supra*. We discern no evidence that Father was denied his opportunity to be heard in this proceeding. *See id.*

In his final issue, Father challenges the trial court's determination that Mother was not in contempt of the custody order. Our standard of review concerning a trial court's contempt findings is well-settled:

> This [C]ourt's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

*B.A.W. v. T.L.W.*, 230 A.3d 402, 406 (Pa. Super. 2020) (citation omitted).

Moreover, this "Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." *Harcar v. Harcar*, 982 A.2d 1230, 1236 (Pa. Super. 2009) (citations omitted).

The Child Custody Act provides:

> **(g) Contempt for noncompliance with any custody order.--**
>
> (1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> > (i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

(iii) Probation for a period of not more than six months.

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

23 Pa.C.S.A. § 5323(g)(1)(i-v).

To establish that a party is in civil contempt, the petitioner must prove by a preponderance of the evidence that: 1) the contemnor had notice of the specific order that he or she is alleged to have disobeyed; 2) the act which constituted the contemnor's violation was volitional; and 3) the contemnor acted with wrongful intent. **B.A.W.**, 230 A.3d at 406 (citation omitted).

On appeal, Father argues that he alleged Mother was in contempt for violating the custody order on several grounds and presented evidence to support each allegation. Father's Brief at 29. The trial court refused to find Mother in contempt but, in its decision, only mentioned one allegation related to Mother's failure to exchange the Child with Father for Father's Day in 2024. **Id.** Father argues that the court erred in not finding Mother in contempt for Father's Day and that his other allegations also warranted findings of contempt. **See id.**

The court explained its rationale as follows:

> The court denies that it erred by denying Father's petition for contempt. The court notes the following requirements for a finding of civil contempt.

[. . .]

Here, the court did not find these elements were met with regard to Mother's actions. For example, the court's order notes that although Mother acknowledged missing Father's Day, she did not act with wrongful intent. The court denies abuse of discretion or legal error in this matter.

T.C.O. at 11-12 (internal citation omitted). On the record and in its custody order, the court found no one in contempt and stated it was "not happy with Mother missing the Father's Day period of custody which she has admitted to. However, contempt requires an intent, and the [c]ourt finds Mother does not have that requisite intent and therefore cannot be found in contempt of Court." N.T., 3/13/25, at 201-02; Order, 3/14/25, at 4.

As noted, our standard of review requires us to determine if the trial court abused its discretion. *See B.A.W., supra*. Here, Father alleged multiple violations of the custody order in the following regards. *See* Father's Brief at 34-35. Mother violated the physical custody provision by not exchanging the Child with Father on Father's Day in 2024. Final Order of Custody, 10/17/22, at 4-5. Mother violated the transportation provision by driving with the Child on her lap and unbuckled. *Id.* at 5-6. Mother violated the communication provision by frequently refusing or avoiding Father's calls. *Id.* at 7-8. Mother violated the disparaging remarks provision by making disparaging remarks about Father and Father's family to the Child. *Id.* at 8.

Mother violated the Child's health and welfare provision by returning the Child with injuries, poor health, and bad hygiene.[2]

The only allegation of contempt that the trial court acknowledged in its decision was related to Father's Day. For Father's Day, the court found that Mother did not have the requisite intent to be found in contempt. Given this finding and that the court found Mother and her witnesses credible related to custody, we can infer that the court's contempt decision was driven by Mother's credibility, *i.e.*, the court credited Mother's explanation for missing the Father's Day exchange. As noted, we defer to the trial court's credibility determinations for witnesses who appeared before it. **See Harcar, supra.** Thus, we affirm the trial court's decision to not hold Mother in contempt related to Father's Day.

However, because the trial court did not address Father's other contempt allegations, they remain outstanding.[3] We cannot simply infer from

_____

[2] We note that contempt is a violation of a court order. **See** 23 Pa.C.S.A. § 5323(g)(1). Although Father references the "Child's health and welfare provision(s)" in his petition for modification and contempt, he does not cite where that provision is in the court order, and we do not see that provision in the October 2022 custody order.

In Father's original petition he noted other contempt allegations, *i.e.*, birth certificate, car accidents, lead in the Child's blood, other physical custody violations, but he failed to raise those in his 1925(b) statement. Accordingly, any objection to the court's failure to rule on these allegations is waived. Pa.R.A.P. 1925(b)(4)(vii).

[3] When a court is faced with both a custody modification and a contempt petition, the best practice is to enter separate orders for each petition. While
*(Footnote Continued Next Page)*

the court's silence that it found those additional allegations to be without merit. We are unable to review the court's decisions, or lack thereof, for an abuse of discretion. Our appellate review is not only impeded; it is impossible. Thus, we remand this matter for the trial court to consider and address Father's preserved allegations of contempt, in full. Father's final issue related to contempt merits relief.

In sum, we discern no error of law or abuse of discretion in the trial court's custody decision or its decision to not find Mother in contempt for Father's Day. On remand, the court is instructed to evaluate and rule on Father's remaining, preserved contempt allegations.

Order affirmed in part and vacated and remanded in part. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/16/2026

---

it benefits judicial economy to hold a joint hearing, separate orders assure that the trial court has fully addressed each petition and allows the parties to separately appeal each order.